JOHN HARRISON v. THE DETROIT, LANSING & NORTHERN
RAILROAD COMPANY.

*Negligence—Railroad companies—Fellow-servants—Proximate cause
of injury—Special questions to jury—Contributory negligence.*

1. An *assistant* road-master who has *general* charge of a division
   of a railroad, and of the work of the section hands thereon,
   which control is absolute as far as their employment and dis-
   charge are concerned, is *not* a fellow-servant with them, but
   must be held to represent the company, which is responsible
   for his negligence while in the performance of the duties so
   delegated to him.[1]

2. Where, in a railroad negligence case, the *proximate* cause of
   the injury complained of was *either* the negligence of a
   *superior* servant of the railroad company in ordering the plaint-
   iff to continue his work upon a detached car while an engine
   was approaching, or the failure of the engineer or fireman
   (plaintiff's fellow-servants) to ring the engine bell, and thus
   give the plaintiff sufficient warning to enable him to save him-
   self from being thrown from the car by the shock of the col-
   lision, it is error to refuse to submit special questions to the
   jury calling for findings whether such warning would have
   been given, and whether the accident would have happened, if
   the bell had been so rung.

3. In such a case the jury should be instructed that if at the time
   said order was given the plaintiff was aware of the near
   approach of the engine, of which fact the superior servant was
   ignorant, and failed to notify him, or to save himself, he was
   guilty of contributory negligence.

Error to Kent. (Grove, J.) Argued January 10, 1890.
Decided February 20, 1890.

Negligence case. Defendant brings error. Reversed.
The facts are stated in the opinion.

---

[1] See *Adams v. Iron Cliffs Co.*, 78 Mich. 272 (head-note 6); *Van-
Dusen v. Letellier*, Id. 493 (b); *Hunn v. Railroad Co.*, Id. 513.

*Smith & Stevens* (*Charles B. Lothrop*, of counsel), for appellant.

*John A. Fairfield, Isaac M. Turner*, and *Birney Hoyt*, for plaintiff.

[The points of counsel are stated in the opinion, and the authorities are so fully discussed in the opinion, and in the cases cited in foot-note to head-note 1, that their restatement from the briefs of counsel is omitted.— REPORTER.]

LONG, J.  This action is brought to recover for personal injuries sustained by the plaintiff through the claimed negligence of the servants of the defendant.  On the trial the plaintiff had verdict and judgment for $9,000.

The plaintiff had been in the employ of the defendant company for about eight years, though for some portion of that time he had been laid off, by direction of those in charge of the works of the company.  During that time, his employment had been confined to the work as a section foreman, and hand under a section boss.  At the time of the injuries complained of one George Light was the defendant's assistant road-master of the western division, having charge of its tracks from Stanton to Big Rapids, and from Howard City to Saginaw,—a line of about 150 miles of defendant's road; Mr. Doyle being the general road-master.

On the morning of November 11, 1887, Light, having been ordered by Doyle, the general road-master, to go to Cedar Lake, east from Edmore, to move some telegraph poles, ordered two section foremen,—Cushton, to whose gang plaintiff belonged, and Horton,—to take their gangs there for that purpose.  Light went with them from Edmore on a hand-car, and assumed charge and direction

of the work.    The poles were partially loaded on a flat-car standing on a side track, and in loading were piled much higher on the side of the car furtherest from the pile of poles than on the other; the car being blocked up to prevent its tipping.    A freight train came along on the main track from towards Edmore going eastward, when Light ordered the engine of this train to be detached for the purpose of moving the car upon which the poles were being placed to another part of the yard.    The engine, on being detached, proceeded eastward beyond the switch; and, the switch being then turned, it was then backed in upon the switch towards the car upon which the plaintiff was at work,—plaintiff, with two other men, being on the east end of the car, with his back towards the approaching engine, and standing on the poles about five feet above the deck of the car.    Plaintiff claims that the engine was then about 60 feet from him, when he desisted from his work, and turned his head around, looked towards the approaching engine, and said to Light, who plaintiff claims was standing near the main track, and about 10 feet east of the car on which plaintiff was at work:    "George, this here car will about do; she is about level,"—and at the same time plaintiff grabbed hold of the poles to protect himself if the engine came back to the car, when Light replied:

"Roll another pole over.    What the hell are you look-ing at?    You have lots of time.    Roll them over!    Roll them over!"

While plaintiff and his witnesses place Light at this time some 8 or 10 feet east of the car, some other evidence puts him near the middle of it.    When this order was given by Light, plaintiff resumed his work; and he testifies that he went to work because Light told him to; that Light was the boss of the gang that day.    Plaintiff says that when he turned around to see, and saw the engine

coming, he thought she was coming to make the switch to move the cars, and then he grabbed hold; but that when Light told him to go to work, he did the same as the rest,—went to work to roll more poles over to level the car up,—and did not think they were going to let the engine come back on the car until they got through. On being asked if he relied upon what Light said in that respect, he stated:

"I had to do as he told me, or may be I would get the red ticket. I thought he would not let the engine come back while we was to work on it."

While the plaintiff was so at work the engine was backed down against the car. Plaintiff was thrown off, and seriously, and, as it is claimed, permanently, injured, and in a condition which wholly prevents him from doing any kind of labor. It is claimed that Light took no steps to warn the plaintiff of the approach of the engine, or to prevent the engine from striking the car. Plaintiff also claims that the bell was not rung, and the jury so found; that he was listening for the bell, and, had he heard it, would have taken it as a signal of danger, and protected himself.

Mr. Light admits ordering the engineer to take the car upon which plaintiff and the others were at work, and move it to another part of the yard, but denies that he gave the plaintiff the order claimed; says that he merely directed the men to level the poles on the car, but gave no other order until after the accident; that he stood with his back partly to the east, and at right angles to the east switch; that he saw the engine pass over the switch to the east and stop, and did not see it again until it struck the car. The defendant also contended that the bell was being rung while the engine was backing down.

At the close of the testimony, counsel for defendant requested the court to instruct the jury:

"1. If you find that the injury to the plaint caused by the negligence of Mr. Light, the assistan· master, the plaintiff cannot recover, for the reaso. the two were fellow-servants, and the master ι liable for an injury to one caused by the neglige· another."

"3. If you find that the plaintiff was ordered b Light to continue work while the engine was approp the flat-car upon which the plaintiff was at worl that at the same time the bell upon the engine was ing and the engine was backing up, then the pla was guilty of contributory negligence in failing to the warning of the bell; and your verdict must b the defendant.

"4. If you find that such order was given by Light, but that afterwards the bell upon the engine rung as a warning of the approach of the engine to flat-car, then the plaintiff was guilty of contributo negligence, and cannot recover in this action.

"5. If you find from the evidence that Mr. Light gave the order to the plaintiff to continue work, as the engine was backing up, but that the fact of its near approach was not known to Mr. Light when he gave the order, and was known to the plaintiff, then the plaintiff was guilty of contributory negligence in failing to notify Mr. Light of its approach, and to secure himself; and your verdict must be for defendant.

"6. If you find that Mr. Light gave the order as claimed by plaintiff, but that at the time of giving it the danger from the engine was not imminent, then the giving of the order was not the proximate cause of the injury, but the proximate cause was his failure subsequently to warn the plaintiff; and for such negl... .e defendant is not liable, and the plaintiff cannot recover.

"7. If it was apparent to the plaintiff, when he looked around to the engine, that the danger of the engine running into the car was then impending and imminent, then the plaintiff was guilty of negligence in obeying Light's order, and cannot recover.

"8. The evidence shows that, if the bell had been ringing as the engine backed down, the plaintiff would have been warned, and would not have been injured; and

I charge you that the omission to ring the bell was the proximate cause of the injury, and the plaintiff cannot recover.

"9. Under all the evidence in the case, the defendant is not liable for the injury to the plaintiff; and your verdict must be, no cause of action."

The court refused to give these instructions, but instructed the jury that the negligence of Mr. Light would be the negligence of the company, and for which a recovery might be had.

Defendant's counsel submitted five special questions for a finding of the jury thereon, as follows:

"1. If the bell had been rung as the engine backed down on the car, would such ringing have given warning to the plaintiff of the approach of the engine?

"2. Was the bell upon the engine ringing when the engine was backing up on the side track to the car on which the plaintiff was at work?

"3. Would the accident have happened if the bell on the engine had been ringing as the engine backed up against the flat-car?

"4. Was the accident caused by the failure of the plaintiff to heed the warning of the bell ringing?

"5. At the time when the plaintiff turned and saw the engine coming and tried to make himself safe, as he testifies, was the danger imminent?"

The court submitted the second, fourth, and fifth of these questions to the jury, and refused the others. To the second, the jury answered, "No;" to the fourth, they said it was disposed of by their answer to the second; and to the fifth, answered "No."

The principal questions argued here are grouped by counsel for defendant under the four following heads:

1. If Light's negligence was the cause of the injury, was Light, in doing this work, the fellow-servant of plaintiff?

2. If he was not, then was his negligence the proximate cause of the accident? Or was such proximate cause the neglect of the engineer or fireman to ring the engine bell?

3. Whether appellant was entitled to have the two special questions one and three submitted?

4. Was the special verdict inconsistent with the general verdict?

No exceptions were taken to the admission or exclusion of evidence during the trial of the cause, and no complaint is made of the charge as given.

The principal contention is that the plaintiff and Light were fellow-servants, and therefore the defendant company could not be held liable for the negligence of Light, even if, through his negligence, the plaintiff received his injuries. It is too well settled in this State to need the citation of authorities that the master is not liable for injuries personally suffered by his servant through the negligence of a fellow-servant, acting as such while engaged in the common employment, unless the master is chargeable with negligence in the selection of the servant in fault, or in retaining him after notice of his incompetency. It is not contended in the present case that Mr. Light was incompetent for the position held by him as assistant road-master, but the claim of recovery is based upon the ground that he was not a fellow-servant of plaintiff. Neither is there any serious contention that the work being performed by the plaintiff was in itself dangerous. The rule, therefore, that the master is bound to provide a safe place in which to work, or suitable tools and materials to work with, has no application to this case.

The fact that the plaintiff was ordered by Light to load the poles upon the car, and to go upon the car to level them, and his having done so in obedience to the order, was not putting him in a place of danger by the assistant road-master. The injuries which he received did not grow out of the work he was ordered to do, either from the work being dangerous in character, or

the place in which he was working dangerous. Neither was he injured by reason of any defect in machinery, tool, or other appliance he was called upon to use. There are many cases in this State holding that, when a superior servant orders one under him to perform work differing from that for which he is employed, the superior is guilty of an abuse of authority, and the master held liable. But in the present case the work being done was in the ordinary line of the duty of the section gang. The ordinary duty is to keep the road bed in repair, but they are often called upon to load ties, poles, and other materials upon the flat-cars, and to unload cars; and they must be held to assume the risk incident to such employment.

The injury resulted either from the negligence of Light in ordering the plaintiff to continue the work while the engine was backing down upon the car, and telling him there was plenty of time, thus throwing him off his guard, and leading him to believe that Light would take care that the engine did not strike the car, or it resulted from the negligence of the engineer or fireman in not ringing the bell, which, if it had been rung, might have given the plaintiff warning of the approach of the engine, so that he could have steadied himself as it struck the car, and thus saved himself from being thrown off, or it was the result of the plaintiff's own carelessness.

If the injury grew out of the negligence of the engineer or fireman in not ringing the bell,—if that was the immediate and proximate cause of the injury,—the plaintiff would have no right of recovery, as the law is well settled in this State that the engineer and fireman, under such circumstances, are the fellow-servants of the plaintiff. It therefore became a material fact in the case, for the determination of the jury, whether the failure of the engineer or fireman to ring the bell was the proximate

cause of the injury; and the court was in error in not permitting the jury to pass upon the special questions 1 and 3 presented. The jury found that—

"The bell was not ringing when the engine was backing up on the side track to the car on which the plaintiff was at work."

·The plaintiff testified that, if he had heard the bell ringing, he would have looked around, and prepared himself for the shock. The answer to these special questions—

"If the bell had been rung as the engine backed down on the car, would such ringing have given warning to the plaintiff of the approach of the engine?" and "would the accident have happened if the bell on the engine had been ringing as the engine backed up against the flat-car?"—

Might have shown that the jury found the injury was caused by the negligence of the engineer or fireman, and that the proximate cause of the injury was their negligence. Counsel for plaintiff contend that these did not submit questions of fact, but possible contingencies, if certain facts which did not exist had existed, and were therefore not proper questions for submission to the jury. They were something beyond mere possibilities, under the testimony of the plaintiff himself. He was a railroad man,—had been engaged in that service for a series of years; and he knew, as he testifies, that the ringing of a bell on an engine is evidence that the engine is about to move or is moving; and even people who are not versed in the rules of railroad companies generally understand this fact. Therefore, according to this testimony, if the bell had been ringing he would have prepared himself for- the shock; and the jury might have found, if the question had been submitted to them, that the acc'd would not have happened if the bell had b...

This finding would, in effect, have been that the accident happened through the negligence of the engineer or fireman, and not through the fault of Light; for, even if Light gave the order to plaintiff to continue his work, and by such order indicated that the engine would be kept from backing down, yet, if plaintiff knew or believed, notwithstanding Light's assurances, that the engine was actually coming, and would strike the car, and place him in peril, very naturally he would have tried to save himself.

There is no evidence that Light had control of the engine, or that the engineer was not in full and complete charge of her. Evidently, the station agent, at the request of Light, gave the order to the engineer to uncouple from his train, and have the flat-car upon which the plaintiff was working moved forward to the other pile of poles. When the engine had backed down to the switch, the forward brakeman of the freight train opened the switch, and then ran back to the car to make the coupling, at the same time giving the engineer the signals to back down. This evidence shows that Light had nothing to do with making the coupling or giving the signals. While he stood near there, and, as plaintiff testifies, between the engine and flat-car, near the track, there is no evidence in the case that he had, or attempted to exercise, any control over the engineer in the manner of backing the engine down, or made any signals to stop or start. It was therefore an important element in the case, for the jury to determine under all the circumstances, and especially under the testimony of the plaintiff himself, whether the failure to ring the bell, if it was not rung, was the proximate cause of the injury; and the urt should have submitted the special questions.

court was also in error in refusing to give the fifth and seventh requests to charge. If, as

stated in the fifth request, Light did give the order to
the plaintiff as he claims, but at that time Light did not
know of the near approach of the engine, and the plaint-
iff did know of its approach, and failed to notify Light,
or to save himself, he was guilty of contributory negli-
gence.    If such facts existed, the plaintiff must have
apprehended a danger which was not apparent to Light.
The evidence is somewhat conflicting as to whether the
engine came to a stop after it approached or crossed over
the switch, but Light testifies that he saw and heard
nothing of its approach; that his back was turned partly
towards the engine, and he was giving his attention to
the men loading the poles.    Plaintiff would have no right
to recover damages for the negligence of Light, if he
was aware of a danger which Light did not apprehend,
and, being aware of it, did not seek to save himself from
injury; and the fact that Light ordered him to go on
with the work would not justify him to do so, in the
face of danger which was apparent to him.    This was
covered by the seventh request, which should have been
given.

   The other requests, as framed and presented to the
court, were properly refused.    The first request to charge
presents the most important question in the case.    It
assumes that Light is a fellow-servant of the plaintiff,
and therefore no recovery could be had, even if his neg-
ligence was the proximate cause of the injury.    Under
the circumstances of this case, was he a fellow-servant,
or a representative of the defendant company, standing
in the position of a superior servant or agent, for whose
negligence defendant company is to be held liable?    If
Light, in this position as a superior servant, represented
the defendant company, and the plaintiff, relying upon
the statement of Light that he had lots of time, went to
work again under the belief that Light would not let

the engine back against the car until the poles had been leveled off, and Light knew that the engine was backing up, or was in a position where he would have known it if he had exercised ordinary care, and gave the plaintiff no warning of its approach, and plaintiff did not know of its approach, the negligence of Light in permitting the engine to back up, and failure to give such warning, would be the negligence of the defendant company, for which the plaintiff would be entitled to recover, if this, and not the engineer's or fireman's negligence in failing to ring the bell, was the proximate cause of the injury. Under such circumstances, the servant's dependent and inferior position is to be taken into consideration; and, if the peculiar risk commanded by the master is not obvious, the servant has the right to assume that he is not being put in peril, and is not bound to investigate into the risk before obeying his orders. He is not called upon to set up his own judgment against his superiors; and he may rely upon their advice, and still more upon their orders, notwithstanding many misgivings of his own. And it is a general rule that if the master directs the servant to do some act which is even dangerous, but which could be made safe by special care upon the part of the master, the servant has the right to assume that such special care will be taken; and, failing to exercise such care, the master is held liable.

The jury found that at the time when plaintiff turned and saw the engine coming, and tried to make himself safe, as he testifies, the danger was not imminent; and, from the issues submitted to them under the charge of the court, they also found that Light not only told the plaintiff there was lots of time, but that he negligently permitted the engine to be backed against the car.

The management of the affairs of a railroad company is vested in its board of directors, and such powers as

Doyle or Light possessed and exercised were such only as were delegated by the directors under the rules of the company. So far as the corporate directors are concerned, no question can be made that for all purposes they represent the corporation, and their acts as a board are the acts of the principal; but, in the management of its affairs, certain powers are and must be delegated to agents or servants who are clothed with certain discretionary powers. If the master places the entire charge of his business, or a distinct branch of it, wholly in the hands of an agent, exercising no discretion and no oversight, the neglect of the agent of the ordinary care in the exercise of the business of the master thus intrusted to him is a breach of duty for which the master is held liable.

Just what relation this superior servant bears to other servants it is often difficult to determine in a given case. The solution of the question must depend largely upon the power delegated to the superior servant, the exercise of such power, and his command and authority over those acting under him. The reciprocal rights and duties of such servants, and the liability of the master, are nowhere defined, except by adjudications of the courts; and in some of the states the duty and liability of the master is pushed much further than in others by these adjudications.

In this State, in 1862, in the case of *Mich. Cent. R. R. Co. v. Leahey*, 10 Mich. 199, the general doctrine was laid down that the master is not liable to a servant for the neglect of his fellow-servant in doing or omitting to do their portion of the common work. This rule has been followed and approved in numerous cases, which have been so often cited that a repetition is unnecessary. This rule grew out of the English doctrine laid down in *Priestley v. Fowler*, 3 Mees. & W. 1, in 1837, and which has since been adhered to in England. The Massachusetts court, in *Farwell v. Railroad Corp.*, 4 Metc. 49

(decided in 1842), adopted the rule of the English courts. Other states followed this rule, until it has become the general doctrine in all the American states. The reason of this rule, as held by the Massachusetts courts in the early case above cited, is that—

"Where several persons are employed in the conduct of one common enterprise or undertaking, and the safety of each depends much on the care and skill with which each other shall perform his appropriate duty, each is an observer of the conduct of the others, can give notice of any misconduct, incapacity, or neglect of duty, and leave the service if the common employer will not take such precautions and employ such agents as the safety of the whole party may require. By these means the safety of each will be much more effectually secured than could be done by a resort to the common employer for indemnity in case of loss by the negligence of each other. Regarding it in this light, it is the ordinary case of one sustaining an injury, in the course of his own employment, in which he must bear the loss himself, or seek his remedy, if he have any, against the actual wrong-doer."

The rule thus adopted did not, however, relieve the master from a duty and obligation to his servants, whether the master be a natural person or a corporation, to furnish safe machinery or other apparatus, and to observe all the care which the exigencies of the situation reasonably required, as well as to employ competent servants. It is the duty of the master, also, to make such regulations or provisions for the safety of employés as will afford them reasonable protection against the dangers incident to the performance of their respective duties. This duty extends to the selection of competent persons, to whom the master may delegate his authority, to take charge of and control the business in which the servants are employed. There is no diversity of opinion upon these propositions. The difficulties arise when courts are called upon to determine who are and who are not fellow-servants in a given case, and this difficulty is made

apparent when we note the hundreds of cases which in the last few years have found their way to the courts of last resort in the different states of the Union. The courts are not in harmony upon this question.

In Massachusetts, it is said that this rule—

"Is not confined to the case of two servants working in company, or having opportunity to control or influence the conduct of each other, but extends to every case in which the two, deriving their authority and compensation from the same source, are engaged in the same business, though in different departments of duty; * * * and it makes no difference that the servant whose negligence causes the injury is a submanager or foreman of higher grade or greater authority than the plaintiff." *Holden v. Railroad Co.*, 129 Mass. 268; 7 Amer. & Eng. Cyclop. Law, 835.

This rule is substantially followed in Maine, though it is said that an exception to the rule exists if the master has delegated to the foreman or superintendent the care and management of the entire business, or a distinct department of it; the situation being such that the superior servant is charged with the performance of duties towards the inferior servant which the law imposes upon the master.

The rule is ably discussed by Chief Justice Church in *Flike v. Railroad Co.*, 53 N. Y. 553, where he says:

"The true rule, I apprehend, is to hold the corporation liable for negligence or want of proper care in respect to such acts and duties as it is required to perform and discharge as master or principal, without regard to the rank or title of the agent intrusted with their performance. As to such acts, the agent occupies the place of the corporation, and the latter should be deemed present, and consequently liable for the manner in which they are performed. If an agent employs unfit servants, his fault is that of the corporation, because it occurred in the performance of the principal's duty, although only an agent himself. So in providing machinery or materials, and in the general arrangement and management of the business,

he is in the discharge of the duty pertaining to the principal."

In *Malone v. Hathaway*, 64 N. Y. 5, Mr. Justice Allen makes the distinction between natural and artificial persons, and lays down the rule that it is only where the master withdraws from the management of the business, intrusting it to a middleman or superior servant, or where, as in the case of a corporation, the business is of such a nature that the general management and control thereof is necessarily committed to agents, that the master can be held liable to a subordinate for the negligent acts of one thus placed in his stead. Under this rule, a foreman who had no delegation of power or control, but who was merely charged with special duties, was held to be a fellow-servant. 7 Amer. & Eng. Cyclop. Law, 834. Mr. Wharton, in his work on Negligence (section 229), says this doctrine is in harmony with the American cases.

As before stated, it is difficult to lay down any general rule which shall determine all cases. In some of the states, it is undoubtedly true that the master is held to a much stricter accountability and responsibility for the acts and omissions of those who are classed by some of the other courts as fellow-servants; and the tendency of modern adjudications is more and more to relax the rule that those who are engaged in the same common enterprise or business are fellow-servants, especially if it can be pointed out that the one in fault occupies some higher grade or more power than the party injured. Especially is this the case where parties are servants of corporations. If parties are fellow-servants while engaged in the business of a natural person, the same rule and reasoning, under like circumstances, ought to place them in the same category while engaged in the business of a corporation; and if one is the agent or superior servant while engaged in the business of a corporation, and through

whose negligent conduct another engaged in the same common enterprise is injured, and for whose injuries the corporation is held liable, then, under like circumstances, if it was the business of a natural person, the master should be so held. Some general rules may, however, be laid down which in many instances may serve as a guide in the determination of the question. It is not to be determined solely from the grade or rank of the offending or injured servant, but it is to be determined by the character of the act being performed by the offending servant. If it is an act that the law imposes the duty upon the part of the master to perform, then the offending employé is not a fellow-servant, but a superior or agent, for whose acts the master is held liable.

Again, if the master has delegated to a servant or employé the care and management of the entire business, or a distinct department of it, the situation being such that the superior servant is charged with the performance of duties towards the inferior servant which the law imposes upon the master, then such superior servant stands in the place of the master, and the rule of *respondeat superior* applies. Whether or not the servant has power to employ and discharge other servants is also important in determining whether or not he is deemed to be a superior servant, for whose acts the master is held liable. *Chapman v. Railroad Co.*, 55 N. Y. 579; *Railroad Co. v. Salmon*, 11 Kan. 83.

When the offending servant, having general power and authority to employ and discharge servants, and having authority to direct and control the injured servant, orders him to do an act not within the scope of the injured servant's employment, whereby he is exposed to danger not contemplated in his contract of service, and he is injured in so doing, or where the master has charged a servant or employé with the sole duty of pro-

viding proper materials and appliances for carrying on the work in which he is personally engaged, and a servant is injured by his neglect so to do, the master is held liable to the injured servant while acting under the orders of the superior servant. *Gilmore v. Railroad Co.*, 18 Fed. Rep. 866.

These rules are in line with the remarks of Mr. Justice COOLEY in *Quincy Mining Co. v. Kitts*, 42 Mich. 39, though the learned Justice, in finally deciding the case, held that Wagner did not stand, in respect to the company, in such position. It was, however, remarked by him that—

"When a servant demands from his master compensation for an injury received in his service, it is necessary that he trace some distinct fault to the master himself. The mere fact of such injury is no evidence of such fault; neither is the mere fact that it resulted from the carelessness of some other person in the same employment. The servant assumes all the usual risks of his employment, and among these is the risk that fellow-servants will sometimes be careless, and that injuries will result. All that can be required of the master in that regard is that his servants shall be prudently chosen, and that they shall not be retained in his service after unfitness or negligence has been discovered, and has been communicated to him. This duty of due care in the employment and retention of competent servants is one the master cannot relieve himself of by any delegation; and, if it becomes necessary to intrust its performance to a general manager, foreman, or superintendent, such officer, whatever he may be called, must stand in the place of his principal, and the latter must assume the risk of his negligence. The same is true of the general supervision of his business. If there is negligence in this, the master is responsible for it, whether the supervision be by the master in person, or by some manager, superintendent, or foreman to whom he delegates it. In other words, while the servant assumes the risk of the negligence of fellow-servants, he does not assume the risk of negligence in the master himself, or in any one to whom

the master may see fit to intrust his superintending authority."

In support of this doctrine the following cases are cited: *Albro v. Canal Co.*, 6 Cush. 75; *McAndrews v. Burns*, 39 N. J. Law, 117; *Malone v. Hathaway*, 64 N. Y 9; *Hard v. Railroad Co.*, 32 Vt. 473.

In *Ryan v. Bagaley*, 50 Mich. 179, it appeared that the defendant resided at Pittsburgh, and was proprietor of the Palmer Iron Mines. Decedent, while working as a laborer in the mine, was killed. The defense was that the casualty was owing to the negligence of Whitesides, who was a fellow-servant. It appeared that Kirkpatrick was the agent of defendant first in station. He knew nothing of the business, and appointed Whitesides as mining captain, and with whom the defendant, on his visits to the mine, consulted. Upon the question whether Whitesides was the fellow-servant of the deceased, the circuit judge charged the jury:

"Now, what was the position of Captain Whitesides? He was a mining captain. I think it appears from the testimony that he had the entire charge and control of the under-ground work, and all the work generally of the mine, and he employed and discharged men. Now, I charge you that Captain Whitesides, if he had this power delegated to him,—to manage and control the mine,—negligence on his part would be the negligence of the owners or managers of the mine."

This Court, in considering that part of the charge, say:

"Under this charge, and in view of all the facts, it was settled by the jury that Whitesides' position and power were as indicated by the judge. We are consequently to consider that he was intrusted with the management of the mine, without direction or interference. He was not, in any true sense, a mere foreman or department leader or sub-chief, in a given sphere of the mining operations. His agency covered the entire mine, and his capacity and discretion dominated. The defendant and the agent, Kirkpatrick, equally regarded him, and looked

to him, as the one person to contrive and execute; and they were guided by his intelligence, not he by theirs. In respect to legal accountability, his negligence was the negligence of the defendant. The case is within the principle stated and recognized in *Mining Co. v. Kitts,* 42 Mich. 34."

Many cases have been presented to this Court involving the questions as to who were and who were not fellow-servants, but in no instance has the question been presented under circumstances exactly like the present case; so that we must determine it upon its own peculiar facts, being guided by the rules here laid down. Applying, therefore, the foregoing rules, so far as the same can be made applicable to this case, is Light to be treated as a superior servant, for whose negligence, if any is shown, the defendant company can be held liable? He had general charge of the entire length of about 150 miles of defendant's road, and had under his control all the section gangs along that line; and there is nothing in the record showing that Doyle, the general road-master, in any way interfered with him in the manner in which the work of that division was being conducted. He in fact controlled that entire division absolutely, so far as employing and discharging the men was concerned. The order came from Doyle to remove these poles, because they were to be taken to another division or branch of the same road. Doyle was not present at the time of the injury, and the fair inference is that whatever power Doyle would have had, if present, Light had like power, and represented the defendant company as fully as Doyle would have done. He did no manual labor himself, but had the full oversight, care, and management of it. It is apparent that the business of the railroad could not be carried forward without this division of labor and responsibility. It was necessary that these heads of departments and divisions should be made, and power

delegated to each head. Under such circumstances, and well-settled rules of law, it must be held that Light represented the company; and for his negligence, while in the line of the duties so assigned and delegated to him, the company must be held responsible.

It is evident that the plaintiff and the other section hands there looked upon Light as the responsible head, from whom they received their orders, and whom they were bound to obey, or else they would receive their "red tickets," or discharges from their employment. Any other rule than this would enable the master to escape all liability, by parceling out his work to different heads of departments or divisions, and retiring from any management or control of it; and the more he abandoned it to others,—the more he neglected it,—the less would he be liable. When the master appoints a middleman with such powers as were delegated to Light in this case, or where the business is of such a nature that it is necessarily committed to agents, with full power to employ and discharge those acting under them, and with full and absolute control of the work, the principal is liable. The master is in a position to select such middlemen and agents with care, and in regard to their fitness for the place, and is responsible for their negligence. *Laning v. Railroad Co.*, 49 N. Y. 521; *Malone v. Hathaway*, 64 Id. 9.

For the errors pointed out, the judgment below must be set aside, with costs, and a new trial granted.

The other Justices concurred.