SNOW v. ESCANABA POWER CO.

1. MASTER AND SERVANT—WARNING AND INSTRUCTING SERVANT—HIDDEN DANGERS.

Deceased had been in the employ of defendant for three days, assisting in constructing a cement power dam to replace a wooden structure in the Escanaba river.   His superintendent ordered deceased to take a scow of gravel and stop a leak in the new dam which was being built below the old one, but failed to warn the employé of the presence of submerged timber braces between the two structures, near the surface of the water.   In attempting to propel the scow out of the current running through the sluiceway of the old dam, deceased caused it to collide with the timbers, concealed from his view, and the boat became unmanageable, the deceased attempted to save himself by swimming, but failed, was carried through the sluiceway of the cement dam and

drowned: *Held* that defendant's failure to warn him of the hidden dangers was negligence.

2. SAME—RISK ASSUMED—SCOPE OF EMPLOYMENT.

The servant assumes only such risks as are incident to his employment.

3. SAME.

The deceased did not assume the risk of the obstruction, which was not obvious, since it appeared that he was employed to stay on shore and wheel sand, in a place where the danger was not visible; and he had not been employed long enough to raise a presumption of knowledge.

4. SAME—CONTRIBUTORY NEGLIGENCE.

Deceased having met the known dangers with safety, it was for the jury to determine whether or not he was guilty of contributory negligence in the way he adopted to protect himself against the hidden danger.

5. SAME—ORDERS OF EMPLOYER.

That the superintendent instructed decedent to load the scow and not to leave shore until the superintendent returned, would not preclude a recovery, where the evidence disclosed the fact that the superintendent was present on the dam when the scow approached, and made no protest and gave no caution.

6. SAME—FELLOW-SERVANT.

Nor did the fact that a co-employé knew of the hidden timbers, but failed to inform deceased of them, although he accompanied deceased in the scow, operate to relieve defendant of its duty.

Error to Delta; Cooper, J., presiding. Submitted June 9, 1910. (Docket No. 31.) Decided September 27, 1910.

Case by Nellie Snow, administratrix of the estate of Harry Snow, deceased, against the Escanaba Power Company for the negligent killing of plaintiff's intestate. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

*James H. Clancy,* for appellant.

*William P. Belden* (*I. C. Jennings,* of counsel), for appellee.

BIRD, C. J.   Nellie Snow, as administratrix, brought this suit under the statute to recover damages for the negligent death of her son and intestate, Harry Snow, a boy of 22 years, who met his death while in the employ of the defendant.

In July, 1908, the defendant was constructing, and had nearly completed, a cement dam in the city of Escanaba, extending from west to east, across the Escanaba river, about 38 feet below, and parallel with, an old wooden dam.   At a point about 105 feet east from the west shore is a sluiceway in the new dam, and 34 feet farther east is a sluiceway in the old dam.   On the west shore approaching the new dam is a power house, and west of that was a sand pile and mixer.   Timber braces, 6x6, had been placed between the old dam and the "false forms" used in the construction of the new dam to keep them in place. These braces had served their purpose, and the lower or down stream ends had been loosened, and most of them had been removed.   The remaining ones were located just east of the sluiceway in the old dam and were partially submerged.   Mr. Huie was defendant's superintendent and had full charge of the construction work.   In the latter part of June he employed the deceased "to wheel sand to the mixer and stay on shore."   On the morning of July 1st a leak in the new dam near the east shore was discovered, and Mr. Huie ordered the deceased to load the scow with sand and take it over and stop the leak. This order involved his taking the scow in a southeasterly course to and through the sluiceway in the old dam, then turning to the left and going east between the dams until he came to the leak.   The order was at once obeyed by the deceased, and an employé by the name of Tatro accompanied him.   They made the journey to and through the sluiceway in the old dam without incident.   When they turned to the left and attempted to go east, the scow ran into one of the timber braces spoken of, and the impact sent the scow back into the strong current running between the sluiceways in the two dams by reason of

which it soon became unmanageable. Tatro jumped and made the dam in safety. The deceased jumped into the stream, but found the current too strong for him, and again took hold of the scow, following it down through the sluiceway in the new dam, where it sank and deceased was drowned.

The negligence relied upon by the plaintiff was the act of defendant in ordering the deceased from his regular employment to do and perform a dangerous service without first instructing him of its attending dangers. Both plaintiff and defendant offered testimony, and after it was closed counsel for the defendant requested the court to direct a verdict for the defendant for the following reasons:

*First.* That under the undisputed facts no negligence has been proven or shown against defendant, and that if there was any risk it was so plain, open, and obvious that the plaintiff assumed it.

*Second.* That if there was a risk it grew out of the negligence of plaintiff himself in taking his boat out contrary to the orders of the defendant.

*Third.* That if there was in any way negligence of Mr. Tatro, if it can be said to be negligence contributing to the injury, it was that of a fellow-servant.

The court granted the motion and directed a verdict for the defendant. These reasons will be considered in their order.

*First.* Was any neglect shown on the part of the defendant? The testimony shows that on the morning of the third day of his employment, Mr. Huie, the superintendent, ordered the deceased to take the scow, with its load of sand, to the leak in the dam. There was only one route by which it could be delivered at that place. Mr. Huie knew this, and he also knew, or ought to have known, that across that route lay the submerged timbers. The testimony tended to show that the deceased did not know of them. It was his duty, therefore, to inform the deceased of the hidden obstruction which he would have to encounter in carrying out his order, and, if he failed to so inform the deceased, he was guilty of negligence, and

his negligence in this respect would be the negligence of the master. 26 Cyc. p. 1165; *Geller* v. *Briscoe Manfg. Co.*, 136 Mich. 330 (99 N. W. 281).

We are not impressed that the deceased assumed the risk if the plaintiff's testimony is to be accepted as true. The rule of law is that the servant assumes only such risks as are incident to his employment. *Chicago, etc., R. Co.* v. *Bayfield*, 37 Mich. 205; *Brown* v. *Railroad Co.*, 118 Mich. 205 (76 N. W. 407). If the deceased was employed "to stay on shore and wheel sand to the mixer," and he was afterward directed to perform this service with the scow, he was directed to do a service outside of his employment and did not assume the risk unless the risk was plain, open, and obvious. In view of the testimony that the timbers could not be seen unless one stood in the vicinity and nearly over them, we think it cannot be said the risk was obvious. The deceased had been employed only two days prior to his being directed to perform this service, and was employed during those two days west of the power house, where his view of the sluiceways and vicinity was obstructed. His brother Walter testified that the deceased did not go out on the dam during the time that he worked there. While defendant's testimony shows that deceased's attention was called to some of the dangers incident to the journey, there is no claim that any one ever informed him of the submerged timbers that lay across the path of the scow, and we do not think that his employment had continued long enough to raise a presumption that he had knowledge of them.

*Second.* Neither are we impressed with defendant's claim that deceased was guilty of contributory negligence. If the deceased knew nothing of the submerged timbers, he could hardly be called upon to protect himself against them. So far as the dangers were apparent, they were successfully met, and the journey was made in safety to and through the sluiceways, and it was not until he came in contact with the unseen timbers that any difficulty was

experienced.   After the scow ran against the timbers, and their presence became known to him, whether he used such care and caution as a man of his years would be called upon to exercise was a question for the jury and not for the court.

*Third.*  It is said that the deceased disobeyed orders; that he was instructed to load the scow but not to leave the shore until the superintendent returned.   While the scow was taking its southeasterly course from the shore down to the sluiceways, Mr. Huie, the superintendent, stood on the dam, a few feet from the sluiceway, and must have seen the deceased and his companion approaching.   He knew they were on their way.   He made no protest.   He asked no question.   He gave no word of caution or warning, and it must, therefore, be presumed that their going had his full consent.

It is also contended that Tatro knew of the danger that would be encountered in carrying out the orders, and that the negligence, if there were any, was Tatro's, and the negligence of a co-servant.   Tatro testified that he advised the deceased that the scow was loaded too heavily and suggested that some of the sand be taken out.   This was done.   He also testified that he advised the deceased that they had better get some rope and another pike pole; but his testimony nowhere discloses that he informed the deceased of the submerged timbers.   In fact, his testimony does not show that he himself knew of them.   Mr. Tatro's testimony was very contradictory and unsatisfactory, and it is difficult to determine from a reading of it how he desired to be understood upon some of the matters about which he testified.   But even though Tatro was informed of the submerged timbers and their location, if he did not make it known to the deceased, the master would not thereby be relieved of his duty to inform the deceased of the hidden dangers he would have to encounter in carrying out his orders.   *Noble* v. *Steamship Co.*, 127 Mich. 103 (86 N. W. 520, 54 L. R. A. 456, 89 Am. St. Rep. 461).

We are of the opinion that these questions were proper ones for the consideration of a jury.

The case is reversed, with costs of both courts, and a new trial ordered.

MCALVAY, BROOKE, BLAIR, and STONE, JJ., concurred.