### DASCHO v. MICHIGAN ALKALI CO.

1. MASTER AND SERVANT — WARNING AND INSTRUCTING SERVANT —CHEMICALS.

An employé working in caustic soda, who was injured by some of the chemical flying in his eye and burning it, was entitled to have the question submitted to the jury, whether or not the master should have warned and instructed him concerning the danger of being burned by the soda, where the evidence tended to show that the employé did not know of its dangerous properties and had not been advised by the employer concerning them.[1]

2. SAME—RISKS ASSUMED—COMMON KNOWLEDGE.

It cannot be said as a matter of law that it is common knowledge that caustic soda is dangerous and will destroy the sight.

3. SAME.

Under testimony tending to show that the injured employé was an ignorant man, that although he had been employed by defendant nearly two months he had not frequently come in contact with caustic soda and did not know it would burn, the question whether or not he assumed the risk was a question of fact.

---

[1] As to master's duty to warn or instruct servant, see note to *James* v. *Rapides Lumber Co.* (La.), 44 L. R. A. 33.

Error to Wayne; Murphy, J. Submitted October 27, 1910. (Docket No. 134.) Decided December 7, 1910.

Case by Thomas Dascho against the Michigan Alkali Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Gray & Gray*, for appellant.

*Arthur W. Edwards* (*George W. Coomer*, of counsel), for appellee.

Stone, J. In this action the plaintiff seeks to recover damages for the loss of his left eye, caused by an injury received by him on the 8th day of January, 1909, while in the employ of the defendant at its plant in Wyandotte. The defendant was there engaged in the manufacture of caustic soda, a compound of lime, soda ash, and water, which possesses burning and corrosive qualities. From appellant's statement of facts it appears that in the course of manufacture the caustic liquid is brought to a point where it is boiled in kettles until it reaches the proper consistency for the finished product. The boiling is done in what is called the "strong liquor department," a room 400 feet long and 200 feet wide, containing 64 kettles, set about 3½ feet apart, and each in a pit or well about 4 feet deep below the level of the floor. The sides of each pit are lined with fire brick. The kettles are heated by gas, led in pipes into the pits. When the liquid has been sufficiently boiled, it is taken off in ladles. The kettles frequently burn out under the strong heat. The metal becomes thin, and finally a small hole wears through the kettle, from which the liquid leaks into the bottom of the pit. It then becomes, at once, the duty of the attendant to shut off the gas and allow the kettle to cool, so that it may be replaced, and within 12 hours the kettle is usually cool enough to admit of· this, but in the meantime more or less of the caustic has leaked through into the pit, where it slowly hardens. After the defective kettle has been re-

moved and before a new one is put in place, the pit is cleaned out. By that time the caustic has so hardened that it is necessary to use a bar or pick to break it up, so that it may be easily shoveled out.

It appears from the testimony of defendant's witness that the leak in one of the kettles was discovered on the afternoon of the day before the plaintiff was injured, and that the fire was immediately shut off. The next morning the plaintiff was directed to help in removing the defective kettle, which he did, and the pit was then open, and on the bottom there was a quantity of caustic more or less hardened. The plaintiff and his companion were then sent by the foreman with a crowbar and hammer into the pit, to break up and remove the caustic. The testimony varied as to the exact happening of the injury. The plaintiff and his companion testified that the former was holding the bar, while the latter struck the bar with the hammer. But one of defendant's witnesses testified that the bar had been driven under the caustic, so as to pry it up, and that the plaintiff's companion, instead of hitting the bar, used the hammer directly on the caustic. However, it appears that when the hammer fell the caustic was broken into pieces, and one piece flew up and struck plaintiff in the eye, inflicting the injury complained of.

The plaintiff is a German, who testified through an interpreter. He was 47 years old at the time of the trial. He commenced to work for defendant on November 17, 1908. He had never worked before where caustic soda was made. He was a common laborer, and his work about the plant had been varied. He admitted on cross-examination that twice before the injury he had been called to work in the caustic soda plant; that he assisted in taking a kettle out and in putting one in, but that he never before took part in cleaning out the pit. He had worked driving team, hauling cinders, and also in the dissolver ash department, in the strong liquor department, and in the powdered caustic department, unloading salt, unloading coal, wheeling ashes, and on one or two occasions had

shoveled some of the manufactured article into an elevator, and at another time he had helped load bags onto a cart. It is undisputed that at the time of the injury both the plaintiff and his companion had their feet wrapped in bags or cloths, and had mittens on their hands. The plaintiff claimed, however, that he was told to wrap his feet because otherwise his shoes would be burned, but that he was not told where the heat was, whether in the floor or something else; and that he had his mittens on when working outside, and when he was called in, he kept them on. Upon the subject of his knowledge of the properties of caustic soda the plaintiff testified:

"I found out what caustic soda was when I lost my eye. I did not know before that. Before I worked at the Michigan Alkali Company, I always worked with the farmers, and never worked at any place where caustic soda was made. I never used caustic soda myself for any purpose before that time. I did not know what it was made of, or what it was used for."

One of the defendant's witnesses, the superintendent of the caustic plant, testified as to the nature of caustic soda as follows:

"The material is usually called caustic soda. The chemical—sodium hydrate. That is, the hydrate that is in it; it depends upon how much is in it. It is a white brittle solid, and has a powerful caustic quality. It does not destroy animal and vegetable matters. If you put your hand in the fire it will burn. The fact that it is used for making soap shows that it does not destroy the fat. When it touches flesh it burns it for a length of time."

There was no claim or testimony that the plaintiff had ever been instructed as to the dangers of working where caustic soda was manufactured, or that he had ever been warned of any danger. It is the claim of the plaintiff that he should have been so warned and instructed. Upon the trial of the case the defendant moved for a directed verdict in its favor. This was denied, and the case was submitted to the jury, and they returned a verdict for the plaintiff in the sum of $2,500 damages. The de-

fendant has brought the case here upon writ of error, and the only error assigned is upon the refusal of the court to direct a verdict for the defendant. It claims that it is common knowledge that caustic soda possesses burning and corrosive qualities, and that such a substance when struck might fly up; and that the plaintiff therefore assumed the risk, and was chargeable with such knowledge.

An excerpt from the charge of the court will show that the case was submitted to the jury upon a clear and narrow issue. Speaking of the mass of caustic soda, the court said:

"It was a brittle mass, and any man of reasonable prudence or care must know, while working upon it in the manner in which he and his companion were working, that it would have chipped off, be deflected, and perhaps strike him. So that it cannot be said that any cause of action arises from the fact that chips flew up from the mass of hardened caustic soda. But it appears that chips which did fly up struck the plaintiff and burned him, and that is the sole issue of fact presented in this case, namely: Is the defendant to be charged with negligence in not having informed the plaintiff that the caustic soda, if it struck plaintiff, would burn him? So, gentlemen of the jury, your inquiry, when you come to ask yourselves, first, is the plaintiff chargeable with any negligence himself; secondly, is the defendant company chargeable with negligence—that inquiry should be devoted solely to the question whether or not the plaintiff knew, or should have known, that that caustic soda would burn him; and whether or not the defendant company, through some of its agents, should have notified him that the caustic soda would burn if it touched him. That is the sole ground upon which negligence is claimed in this case by the plaintiff."

Did the court err in thus submitting the case to the jury? Much depends upon the intelligence and experience of the plaintiff in determining whether he understood, or should have understood and appreciated, the danger. *Swoboda* v. *Ward*, 40 Mich. 420. The language of this court in *Parkhurst* v. *Johnson*, 50 Mich. 70 (15 N. W. 107, 45 Am. Rep. 28), where there was failure to notify

an employé of an unusual risk, is appropriate here.   Justice COOLEY said:

"The circuit judge thought there was some evidence of negligence on the part of Johnson in these facts, and we agree with him.   He took an inexperienced man into a place of danger without apprising him of the risks, and without any warning that danger was to be anticipated. It is true the workmen in the business testify that they do not consider it dangerous, and probably it is not when one fully understands it; but this man did not fully understand it, and the danger and loss of life came to him in consequence."

See, also, *Smith* v. *Car Works*, 60 Mich. 501 (27 N. W. 662, 1 Am. St. Rep. 542); *Charron* v. *Carbide Co.*, 151 Mich. 687 (115 N. W. 718); *Potvin* v. *Shipbuilding Co.*, 156 Mich. 201 (120 N. W. 613).   We think that the question of the master's duty to warn its servant in this case was for the jury.   See *Adams* v. *Refrigerator Co.*, 160 Mich. 590 (125 N. W. 724, 27 L. R. A. [N. S] 953).

We cannot say, as matter of law, that the plaintiff knew, or was bound to know, the burning properties of caustic soda, and we think that question was properly submitted to the jury.   *Snow* v. *Power Co.*, 162 Mich. 579 (127 N. W. 677); *Goda* v. *Maurer*, 162 Mich. 621 (127 N. W. 799).   We are of opinion that the issue was fairly and fully submitted to the jury as to whether the plaintiff knew, or should have known, that caustic soda would burn.   Had the pit been filled with a hardened mass of sand or sawdust, and had the foreman directed the plaintiff to break it up and shovel it out, there would have been no duty resting upon defendant's agent to have informed plaintiff of any latent danger, because a person of no more intelligence or experience than plaintiff possessed would, or should have known the nature of such substances, as common knowledge.   But that cannot be said of caustic soda, because it is quite apparent, judging from results, that caustic soda, when coming in contact with a person's eye, is dangerous, and we think

that knowledge of that fact is not common knowledge.

We find no error in the record, and the judgment of the circuit court is affirmed.

BIRD, C. J., and OSTRANDER, HOOKER, and MOORE, JJ., concurred.