## DAVID STANLEY v. THE CHICAGO & WEST MICHIGAN RAILWAY COMPANY.

*Railroad companies — Negligence — Proximate cause—Fellow-servants.*

1. It is the established rule in this State that employés at work on freight trains are fellow-servants.

2. Where an applicant for employment as a brakeman on a regular freight train, in order to obtain the position, falsely states to the agent of the railroad company to whom the application is made, and to the conductor to whose train he is assigned under such employment, that he has had experience in the line of work mentioned, the company has a right to believe that he is familiar with the work, and to govern itself, as to instructions regarding the manner of its performance, accordingly.

3. A conductor of a freight train desired to leave two box cars on a siding, and directed a brakeman to get upon an empty flat car next to the tender, and assist in making a running switch. The brakeman mounted the flat car, and kneeled down at the rear end. The conductor climbed upon the first box car, which was attached to the flat car, and took his station at

the rear, to apply the brake, in which position he was out of sight of the brakeman. The brakeman pulled the pin at the proper time, and, just as he was reaching over the end of the flat car to lay it on the bumper of the detached box car, the engine suddenly started ahead, and he was thrown onto the track, and his leg so injured as to render amputation necessary. Neither the conductor nor the brakeman gave the engineer any signal to go ahead when the pin was drawn. And it is held that the engineer should not have started up his engine until notified; that the sudden starting of the engine and flat car was the proximate cause of the accident, for which the engineer alone was responsible; and, being a fellow-servant of the brakeman, the railroad company was not liable for the consequent injury to the brakeman.

Error to Newaygo. (Palmer, J.) Submitted on briefs June 7, 1894. Decided June 16, 1894.

Negligence case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*W. D. Fuller* and *A. F. Tibbitts,* for appellant, contended:

1. The right of plaintiff to recover is based upon the proposition that it was the duty of the defendant to secure to its employés the right to perform their work in a manner reasonably safe, and that, in recognition of this duty, it adopted the rule forbidding the making of running switches, which duty and rule it violated, through the conductor it had placed in charge of said train, by ordering the plaintiff to assist in making such a switch; and that it thereby became liable to him for the injury he received in consequence of obeying said order, in ignorance of said rule. The circuit judge recognized this proposition, but sought to avoid its force by holding that the *proximate* cause of the injury was the sudden forward movement of the engine after the coupling pin had been removed, caused by the action of the engineer, who was plaintiff's fellow-servant, for whose negligence the defendant was not liable. The fallacy of this reasoning is apparent, in view of the fact that the order could not have been obeyed without such forward movement of the engine, it being an essential part of a running switch. Plaintiff does not complain of the *manner* in which the order was obeyed, nor claim that a perfect running switch was not made, but the negligence

charged is the *giving of the order*, obedience to which resulted so disastrously to the plaintiff.

The making of running switches is dangerous under ordinary circumstances, and, in this case, the danger to the plaintiff was increased by reason of the surrounding darkness and the fact of there being but the one empty flat car to withstand the sudden 'forward movement of the engine after the box cars were released. All of these facts would have been important, if the jury had been left to pass upon the question whether this manner of switching was "securing to the plaintiff the right to do his work in a manner reasonably safe," and they are equally important as an answer to the ruling of the court that the sudden forward movement of the engine was the proximate cause of the injury to the plaintiff, inasmuch as such forward movement was necessarily called for by the order of the conductor to make such a switch.

See, as to proximate cause, *Lewis v. Railway Co.*, 54 Mich. 55, where the question is discussed at some length by Chief Justice COOLEY, and the authorities reviewed; also *LaDuke v. Township of Exeter*, 97 Mich. 450, holding that, where the owner of a horse is injured by the struggles of the animal in attempting to extricate itself from a hole in a township bridge into which it has stepped, the negligence of the township in failing to keep the bridge in repair is the proximate cause of the injury.

2. How. Stat. §. 3369, makes it the duty of every railroad corporation in this State to furnish to each of its employés, of every grade, a printed or written copy of its rules and regulations relating to their respective duties, and provides that any conductor, engineer, servant, or other employé of such railroad corporation, who shall *knowingly* violate any of the printed or written rules or regulations of such company, shall be subject to à fine of not less than $25 nor more than $100, or to imprisonment in the county jail not more than three months, or to both such fine and imprisonment, in the discretion of the court. The circuit judge practically nullified this statute, as far as this case is concerned, by holding that the duty of a railroad company is performed when it promulgates and publishes its rules; that it is just as much the duty of an employé to inform himself regarding such rules and regulations as of the company to inform him in that regard; that every contract is made subject to such rules; that, if the employé is an inexperienced man, it becomes the duty of the company to inform him of the rules, but, if he is an experienced man; and so states, he is bound by his statement, and, as to him, the company performs its duty when it publishes its rules and regula-

tions, and he contracts with reference thereto. The statute makes no such distinction, but applies to all employés, of every grade, whether experienced or inexperienced. The defendant is not charged with negligence in failing to furnish the plaintiff with a copy of its rules, but that fact becomes important as an excuse for his violating the rule in question, of which he was ignorant, for, had he *knowingly* joined with the conductor and engineer in. its violation, he might be estopped from charging the defendant with the consequences of such disobedience.

3. If the *proximate* cause of the injury was the negligence of the defendant in ordering plaintiff to assist in making said running switch, it would seem that the question whether the conductor and plaintiff were or were not fellow-servants *while associated together in carrying out the order*, as held by the circuit judge, is unimportant, for certainly the conductor, in *giving the order*, occupied a different relation to the plaintiff. He testified that he received from the defendant the rules and regulations for the government of employés, among which was the one in question; that he had control of the entire train and of the men, and that they were obliged to obey his orders. It is true that he testified that he had no authority to discharge a man, even temporarily, for disobedience to his orders, but it is apparent from his testimony that a refusal to obey his orders would be equivalent to a discharge. Can it be held that the defendant could delegate to this conductor such control over the plaintiff, and yet escape liability for his violation of a rule, made for the plaintiff's protection, and which it was defendant's duty, under the statute cited, to have furnished to the plaintiff as well as the conductor, and which provided that the conductor should be held personally responsible if he violated its provisions?

In *Palmer v. Railroad Co.*, 87 Mich. 281, 290, the Court, after stating that "it is a well-established rule that the employer must furnish a safe place for his employés to work, and safe appliances or tools with which to do the work," say that "it is as well the master's duty to provide that the *manner* in which the work is being done shall be also safe, and, in all cases where the danger can be readily guarded against, the employer is in duty bound to protect the employé at his peril." A railroad company, in the performance of this duty, must act through its agents, and this necessarily involves the making of general rules for the government of its business. In recognition of this fact, the Legislature, by the act cited, not only makes it the duty of every such corporation to

furnish its employés with such rules, but punishes the employés for their violation by fine or imprisonment, or both. Among the rules adopted by the defendant was the one forbidding the making of running switches, when practicable to do the work without. This rule, unlike the statute, makes the conductors and enginemen alone· personally responsible for its violation, thus plainly showing that they were placed, in this regard, upon a different footing than the brakemen who might be called upon to assist in making such a switch. Some one must decide the question of practicability, and thus construe the rule for the particular occasion. This duty naturally devolved upon the conductor, who was in control of the train, and directing its movements, and in its performance, which included the giving of the necessary orders, he represented the defendant, and it is liable for his negligence in giving the unlawful order.

It is not necessary to inquire whether an employé who obeyed such orders with knowledge of the rule could recover for consequent injuries, for it is conceded that the plaintiff possessed no such knowledge, not having been furnished with a copy of the rules, as required by the statute; and, under all of the authorities, he was justified in obeying the order given him by the conductor. See, as to the latter proposition, *Railway Co. v. Bayfield*, 37 Mich. 205.

In *Ashman v. Railroad Co.*, 90 Mich. 567, the plaintiff was employed as a switchman in defendant's yard, and was injured by reason of catching his foot in an unblocked frog while attempting to uncouple cars in a moving train. And it is held that the duty of keeping the frogs in its yards filled or blocked is one that a railroad company cannot delegate to any of its employés, so as to relieve itself from the obligation imposed by the statute, under which it is required to keep its yards reasonably safe·in this respect, which duty is of such a character that the person or persons to whom it is intrusted stand in the place of the railroad company, and their neglect is its neglect. This statute, which was passed in opposition to the wishes of the railroad companies of the State, was designed to·make the *place* where their employés were called upon to work safe, and the rule, voluntarily adopted by the defendant, was designed to secure to its employés greater safety in performing certain kinds of work, and a like duty arises in both cases, on the part·of the companies, namely, to see to it that the statute and the rule are obeyed; and the defendant could no more delegate the performance of this duty, so as to escape liability for its breach, in the one case than in the other.

*Smiley, Smith & Stevens,* for defendant, contended for the doctrine of the opinion.

GRANT, J. Plaintiff was a brakeman in defendant's employ. The train crew consisted of the conductor, engineer, fireman, and two brakemen. The train was composed of about 25 freight cars. An empty flat car was next the tender, the remainder being box cars. It was necessary to leave two box cars at a station known as "Linderman Siding." The conductor communicated this information to plaintiff. The train had stopped about four or five car lengths from the switch. Plaintiff started to go between the cars to uncouple them. He testified that the conductor said:

"No, no; get up on that flat car, and do not pull the pin until the train is running. We are going to make a flying switch."

The way such switches are made is as follows: The train is started slowly towards the switch, slack is then given, the pin is pulled while the train is in motion, the engine then starts up, and goes past the switch, and one brakeman then turns the switch, letting the disconnected cars pass upon the siding. To accomplish this, plaintiff got upon the rear of the flat car, got on his knees, supported himself on one hand, there being no brake at that end, pulled the pin, and, just as he was reaching over to lay it down on the bumper of the box car, the engine started ahead, throwing him to the ground, and his leg was injured so that amputation became necessary. He testified that he gave no signal to the engineer to go ahead. Before the train started for the switch the conductor had climbed upon the first box car, and taken his station at the rear, to apply the brake, in which position he was out of sight of the plaintiff. Neither could plaintiff be seen by the engineer, on account of the tender. Plaintiff had

had no experience in braking upon regular freight trains, but had some time previously had a little experience on a logging railroad hauling logs onto the main track, and sometimes did switching onto the main track; and for about five months in 1889 he was brakeman on a logging railroad, 12 or 13 miles long, in the Upper Peninsula. In order to obtain the position on the defendant's road he falsely stated to its agent who employed him that he had done braking on the Minneapolis road from Minneapolis to Sault Ste. Marie, and to the conductor that he had been railroading on the St. Paul & St. Louis road. The court directed a verdict for the defendant upon the ground that the proximate cause of the accident was the sudden forward movement of the engine, and that the conductor and engineer were both fellow-servants of the plaintiff.

It is the established rule in this State that employés of freight trains are fellow-servants. There is no evidence of any delegation of authority by the company to the conductor which made him a vice-principal. Plaintiff's counsel seek to avoid this rule by contending that it was the duty of the defendant to secure to its employés the right to perform their work in a manner reasonably safe, and that in recognition of this duty it adopted a rule forbidding running switches when it is practicable to do the work without, and that plaintiff had no knowledge of this rule. The witnesses do not agree as to whether this was a running switch, but for the purposes of this case it must be assumed that it was. The conductor gave no signal to the engineer to go faster when the pin was drawn. The plaintiff testified he gave no signal. The conductor testified that the plaintiff cried out, "All right." It is too clear to require discussion that the sudden starting of the engine and flat car was the proximate cause of the accident, and for this, according to plaintiff's evidence, the engineer alone was responsible. He should not have started

up his engine until notified. If it was the customary way to uncouple the cars for a brakeman on his knees to lean over the opening for that purpose, certainly it was the duty of the engineer to wait for the signal which would indicate that the brakeman was out of danger. But it seems pretty clearly established by the evidence that the usual way is for the brakeman to lie flat upon the car, in which position there would be no danger. The testimony is uncontradicted that the work done in this manner is not as dangerous as coupling cars. Had the plaintiff notified either the agent or the conductor, as he should have done, of his inexperience, probably he would either not have been employed, or, if employed, would have been given instruction as to how to do the work. But under his representation defendant had the right to believe that he was familiar with the work for which he applied. We think the direction of the court below was correct.

Judgment affirmed.

The other Justices concurred.