WILLIAM G. PALMER v. THE MICHIGAN CENTRAL RAILROAD COMPANY.

*Master and servant—Negligence—Injury to employé—Vice-principal—Evidence.*

1. The question of the negligence of a railroad company in directing, by its assistant road-master, its sectionmen to load steel rails lying along the track onto moving flat-cars, should have been submitted to the jury, under the circumstances of this case.

2. It was error to refuse to permit the plaintiff to show how many of the sectionmen thus employed had had no experience in that particular kind of work, the severity of the work, whether any of the men gave out before the accident to plaintiff, whether plaintiff could see the rail before it hit him, and that loading the rails onto moving cars was more dangerous than upon stationary cars.

Error to Cass. (O'Hara, J.) Argued June 10 and 11, 1891. Decided July 28, 1891.

Negligence case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Howell & Carr,* for appellant, contended:

1. Plaintiff was under obligations to obey the orders of his superiors, and he assumed no risks except those which properly pertained to his employment, and those which he understandingly assented to; citing *Railway Co. v. Bayfield,* 37 Mich. 205; *Swoboda v. Ward,* 40 Id. 424, 425; and he had the right

to assume that his danger was not increased by the *manner in* which the work was ordered done; citing *Iron Co. v. Erickson,* 39 Mich. 492; *James v. Mining Co.*, 55 Id. 336.

2. In all cases when the danger can be readily guarded against, the employer is in duty bound to protect his employé, and, if he does not, his failure is at his peril; citing *Hathaway v. Railroad Co.*, 51 Mich. 258; *Cook v. Railway Co.*, 34 Minn. 45.

3. The well-established rule that the employer must furnish a safe place and tools for the work (*Smith v. Car Works*, 60 Mich. 502; *Swoboda v. Ward*, 40 Id. 420) must, of necessity, have reference to the manner in which the work is performed, and, when a proper place and tools are furnished for the performance of the work in a certain manner, the adoption of another manner, which renders the place or appliances unsafe, is actionable negligence. Every decided case which deals with the question of suitableness of means recognizes the necessity of methods suitable to such means; citing *Johnson v. Water Co.*, 71 Wis. 553; *Railroad Co. v. Barber*, 5 Ohio St. 542; *Booth v. Railroad Co.*, 73 N. Y. 38; *Hewitt v. Railroad Co.*, 67 Mich. 65; *Marshall v. Furniture Co.*, Id. 167; and the laws requiring railroad companies to make suitable rules for the protection of their employés (*Railway Co. v. Taylor*, 69 Ill. 461; *Railway Co. v. Powers*, 74 Id. 341; *Abel v. Canal Co.*, 103 N. Y. 581; *Railway Co. v. Lavalley*, 36 Ohio St. 221; Wood, Mast. & S. § 403; 1 Addison, Torts, 605), and making them liable for the enforcement of such rules (*Railway Co. v. Bayfield*, 37 Mich. 205; *Madden v. Railway Co.*, 57 Amer. Rep. 695), require a supervision of the company over the manner in which its work is being done. Such rules can relate only to the manner of doing work, and, if they adopt or permit a method which causes an accident, they are liable; citing *Hunn v. Railroad Co.*, 78 Mich. 515; *McGovern v. Railroad Co.*, 123 N. Y. 280; *Johnson v. Spear*, 76 Mich. 139; *Kean v. Rolling Mills*, 66 Id. 277; *Eddy v. Mining Co.*, 81 Id. 548.

4. The manner in which the defendant required this work to be done made it impossible to provide against the danger it created, and impossible to give the servant sufficient notice of the approach of danger to enable him to escape. The law is well settled that the master must make the work safe (*Paulmier v. Railroad Co.*, 34 N. J. Law, 15; *Nadau v. Lumber Co.*, 76 Wis. 120; *Swoboda v. Ward*, 40 Mich. 420), and give the servant notice of dangers (*Erickson v. Railroad Co.*, 41 Minn. 500), and if, through the master's management, the warning becomes impossible or useless, and the work unnecessarily unsafe, why should he be released?

5. It is also the master's duty to instruct the servant and qualify him for the work, and the instruction must continue to completion; citing *Brennan v. Gordon*, 118 N. Y 489; *Nadau v. Lumber Co.*, 76 Wis. 120; *Parkhurst v. Johnson*, 50 Mich. 70.

6. When the servant is doing a special act under the express direction of the master, he does not assume risks pertaining to the employment, but only such as are patent and understandingly appreciated by him; citing *Railway Co. v. Bayfield*, 37 Mich. 205; *Swoboda v. Ward*, 40 Id. 424, 425; *Iron Co. v. Erickson*, 39 Id. 492; *Smith v. Car Works*, 60 Id. 501; *Taylor v. Railroad Co.*, 16 Am. St. Rep. 372, 377; *Myers v. Iron Co.*, 150 Mass. 125; *Snow v. Railroad Co.*, 8 Allen, 441.

*Edwards & Stewart*, for defendant, contended:

1. Plaintiff assumed the ordinary risks of the service he entered upon; citing *Davis v. Railroad Co.*, 20 Mich. 105; *Swoboda v. Ward*, 40 Id. 420; *Mining Co. v. Kitts*, 42 Id. 34; *Railroad Co. v. Smithson*, 45 Id. 212; *Hathaway v. Railroad Co.*, 51 Id. 253; *Smith v. Car Works*, 60 Id. 501; *Kean v. Rolling Mills*, Id. 277; *Balle v. Leather Co.*, 73 Id. 158; *Melzer v. Car Co.*, 76 Id. 94; *Fisher v. Railway Co.*, 77 Id. 546.

2. As fellow-servants of plaintiff, all the employés at the time of the accident, employed in the same general business of removing the rails, must be classed; and this includes the gangs of men who lifted and loaded the rails, the engineer, fireman, conductor, and the assistant road-master; citing Cooley, Torts, 545, 551; *Connelly v. Railway Co.*, 38 Minn. 80; *Harrison v. Railroad Co.*, 79 Mich. 409; and defendant is not liable for Wahl's negligence while in the same general employment with plaintiff; citing *Railroad Co. v. Leahey*, 10 Mich. 193; *Davis v. Railroad Co.*, 20 Id. 105; *Railroad Co. v. Dolan*, 32 Id. 510; *Henry v. Railway Co.*, 49 Id. 495; *Hewitt v. Railroad Co.*, 67 Id. 61; *Mining Co. v. Kitts*, 42 Id. 34.

LONG, J. This action was brought in the circuit court for the county of Cass, and a trial was had before the court and jury, and at the close of the testimony the court directed a verdict in favor of the defendant.

The claim stated in the declaration substantially is that the plaintiff who was a strong and active man of 29 years of age, entered into the service of the defendant on September 10, 1889, as a laborer, at $1 per day, working in and about repairing tracks of defendant, on

one of the sections, under the direction of the section boss, and performing such duties as are usually performed by section hands; that on the 11th day of September, 1889, and when he had been in the employ of defendant but one day, he was, together with other section laborers, wrongfully and negligently ordered to load a large number of steel rails, lying along either side of the track of the defendant, upon certain flat-cars, while the said cars were in motion; that said work was being done by a large number of sectionmen, about 30, composing these section gangs, and the crew of the train upon which the rails were being loaded, the whole force so engaged being under the direction and control of defendant's assistant road-master, one Patrick Wahl, who was by the defendant authorized and directed to order, direct, and control such work, and who, in accordance therewith, ordered said train to be kept in motion while the rails were being loaded by the plaintiff and his fellow-workmen; that it was necessary, in the performance of the work in that manner, that the men should, after heaving each rail upon the car nearest them, run forward with the train, but at a greater speed, to the next rail, so as to have it in the air ready to heave when the car reached them; that the plaintiff was stationed near the end of the line, and in running to the next·rail was near the head of the line, that is, he was the third man from the head in the line in going forward, and was therefore obliged to run fast enough to keep his place, and not delay those behind him, and so was wholly unable to watch the rails upon the car to see if they were safely lodged, and to see such rails if they should fall; that at the time and place aforesaid, while the plaintiff was in his place in the line, running towards the rail next to be loaded, and while in the exercise of due care, and without negligence on his part, a rail

which had been thrown upon the said car so moving fell off in such a manner as to strike the plaintiff upon the arm and leg, and so broke and crushed his leg near the ankle as to render its amputation necessary.

Plaintiff avers that the injury was in no manner caused or contributed to by any negligence on the part of his fellow-workmen, but was the result of the negligence and unwarrantable manner in which the defendant required the work to be done. The charge is that it was the duty of the defendant to furnish the plaintiff, not only with reasonably safe place and appliances for the performance of his duty, but also to secure to him the right to the performance of his work in a manner reasonably safe; yet, notwithstanding this duty, the defendant negligently and wrongfully furnished him flat-cars to be loaded by him with steel rails, lying along the track of said road, without appliances to prevent such rails from falling off, and required said rails to be loaded from the place where they lay without regard to the width of the available track or path along-side the train upon which they were to be loaded, and furnished for plaintiff's assistance men who were untrained and unskilled in such work, of which fact plaintiff was ignorant, and wrongfully and negligently, and with notice of the premises, required such rails to be loaded while said flat-cars were being moved by the engine attached to them at a dangerous rate of speed.

It is further claimed that, if the cars were standing still, the men were able to heave the rails upon them so as to load them safely and securely, but that while the cars were in motion it was difficult to load them evenly and securely, and that the business of loading said rails was properly the work of men especially employed and trained thereto; that it was not such work as was within

the ordinary scope of plaintiff's employment, and was more laborious and more dangerous, and that the requirement of said defendant that plaintiff should do such work was wrongful, and in disregard to plaintiff's rights under his employment; that he did not know what was the limit of his duty, or his rights under his contract of employment, and had no knowledge or notice of any danger attending the work he was so directed to do, but which was well known to defendant and its agent.

The plaintiff introduced testimony tending to show that he had no previous experience in railroad work of any kind; that the rails laid in line along the side of the track for a distance of some three miles, and the men were required to load them with the train moving at from one to four miles an hour. Each rail was 30 feet long, and weighed 650 pounds, and not over 16 men were at each rail at any time. Plaintiff claims that the work was very hard and severe, and that part of the men gave out before the injury, and left an insufficient force to do the work, but that he did not, know this until after his injury; but direct evidence upon this branch of the case was excluded by the court. It appears that the men would lift a rail, and heave it on the car, and then instantly turn and run with the train to the next rail, so as to heave it on the same car. While the train was going, as plaintiff's testimony tended to show, about four miles per hour, and when a mile of rails had been picked up, one rail "flew off, and bounded back," as it is expressed by the witnesses, and caught the plaintiff, who was, with the rest of the men, running to the next rail, threw him against the bank, and then fell upon his leg, and crushed it so that it had to be taken off below the knee. The plaintiff testified that he did not know that the work was dangerous, and that no instructions were given him,

and that the rail which came off was thrown the same as the others. This testimony was corroborated by others.

The defendant's witnesses testified that the work was not dangerous; that rails often flew or bounded back, and that such rails would indicate by their sound that they were coming back; and that, if they did come back, they were liable to hurt some one, unless they got out of the way. There was no claim, however, that any one knew this, except a few of the more experienced hands, and no claim that the plaintiff, or the other inexperienced hands, were warned of it.

The circuit judge refused to permit the plaintiff to show how many of the men had had previous experience, or that the plaintiff had had no previous experience, or how hard the work was, or whether any of the men gave out before the accident, or whether the plaintiff was in a position where he could see the rail before it hit him, or whether he would have been hurt if the train had been standing still. The accident happened in a cut, the bank of which, as the plaintiff's testimony tends to show, was higher than plaintiff's head; that the men ahead of him and behind him, the bank at his left, and the rail bounding off at his right, made his escape impossible; that the men were as close together as they could work, the man ahead of him barely escaping the rail, and the man behind him having his boot scraped by it.

It appears by the defendant's testimony that the work was done occasionally in this way,—that is, the rails thrown upon the cars while moving,—but it does not appear to have been the usual way of loading such rails; the witnesses putting. it from twice in one year to twice in nine years that rails had been loaded upon cars while they were in motion. The defendant introduced testimony tending to show that it was the duty of the sec-

tionmen to do anything they were called upon to do.

The circuit judge, in taking the case from the jury, and directing a verdict in favor of the defendant, held that the company had the right to adopt any method of doing the work it saw fit, and that notice of the method was notice of the attendant risk. He also held that there was no law which would forbid the moving of the train while it was being loaded; that in the present case there was no latent defect, and the plaintiff had full opportunity to observe the manner of loading at the very outset; that any person of ordinary prudence would know that there was danger of being injured while engaged in the loading of cars with T-rails; and that the plaintiff voluntarily assumed the risk incident to such employment.

Defendant's counsel in their brief insist that the work of loading rails on cars, standing still or moving, was the proper work, if required, of sectionmen, and not unusual, and was in this case in consonance with the custom of defendant; that plaintiff entered defendant's employ with full knowledge of the services required, and the risk and danger of such work was readily discernible by him; that the plaintiff did not exercise due care, did not look out for danger, nor try to guard himself from danger; that the injury to plaintiff did not result from any defect in defendant's cars or road, nor from incompetency of its employés, nor from its happening in the cut with the high bank on the side where the plaintiff worked.

Defendant's counsel make the proposition that the plaintiff assumed the ordinary risks of the service on entering defendant's employ. They also claim that the assistant road-master, who had the direction of the work, and who directed the moving of the train while the rails were being loaded, was a fellow-servant of the plaintiff.

It is also insisted that, before ordering the quicker movement of the train, Wahl asked the men if they could not load with the train moving faster; that he spoke to the men generally, and none of them objected, but all acted as though they could; that this was taken as an assent to the faster moving of the train, and the men went right along with their work. It is further claimed that the plaintiff was guilty of contributory negligence; that in entering defendant's employ as a sectionman he assumed the ordinary risks of that service, and the men were especially warned by the assistant road-master, before commencing to load, for each man to look out for himself and avoid danger; that it was his duty, irrespective of this warning, to exercise due care against the danger readily discernible of this service; that he did not look out for danger, did not see the danger, nor apprehend it, and was utterly regardless of it.

We cannot agree with the contention of defendant's counsel. Whatever the claim made by the plaintiff under the testimony which was given upon the trial, and the facts which plaintiff offered to prove, but which were excluded by the court, we are satisfied that the case should have been submitted to the jury as to the negligence of the defendant in directing, by its agent, the plaintiff and these workmen to load these rails upon the moving train, and whether, by the manner in which the rails were directed to be loaded upon the moving train, it subjected the plaintiff to unnecessary danger. We think the requirement of the assistant road-master, that these rails should be loaded upon the train while moving, was unreasonable, as it required unreasonable exertion upon the part of the men, and, under the circumstances here stated, might be found by the jury to subject the men to unnecessary danger. It is true that the

defendant was not an insurer of the lives and limbs of the men engaged in that service, and that the plaintiff assumed the ordinary risks of the employment upon which he entered. But in the service of the railroad company as a sectionman, whose ordinary duties it is to repair the tracks and road-bed of defendant, he would not expect to be called upon to load rails upon a moving train. It appears to have been something unusual that sectionmen were called upon to load these heavy steel rails upon flat-cars, and especially where the cars were moving at such a rate of speed as four miles an hour, as stated by some of the witnesses in this case. The plaintiff assumed no risks except those which pertained to his employment and those which he understandingly assented to, and he had the right to assume that the danger was not increased by the manner in which the work was ordered to be done.

It is a well-established rule that the employer must furnish a safe place for his employés to work, and safe appliances or tools with which to do the work. It is as well the master's duty to provide that the manner in which the work is being done shall be also safe, and, in all cases where the danger can be readily guarded against, the employer is in duty bound to protect the employé at his peril. Mr. Wahl, the assistant road-master, had full charge and direction of this gang of men; he stood in the place of the master; he was a man of years of experience in railroading. The plaintiff had hired as a sectionman, and had had no experience in railroading, and Wahl must have known that the manner in which these men were directed to do the work, in putting these heavy rails upon a moving train, was dangerous. The court below found it so dangerous from the circumstances shown upon the trial that he held that any person of ordinary pru-

dence knows that there is danger of being injured while loading these rails upon a moving train. It is apparent, however, that the plaintiff, by reason of his inexperience, did not apprehend the danger to life and limb in the manner in which the work was being done.

It is quite apparent from the record that the manner in which the defendant required this work to be done made it almost impossible to provide against the danger it created, or to give the plaintiff such notice of the approach of danger as to give him a chance to escape. The service required of the plaintiff was not in the ordinary line of a sectionman,—that is, sectionmen are not ordinarily called upon, as shown by the record, to load these heavy steel rails upon a moving train; and it therefore became, as we think, the duty of the court to leave the question of fact to the jury, under the circumstances to determine whether the manner in which the work was being done subjected the plaintiff to unnecessary danger, and whether the plaintiff could, under the circumstances, have avoided it.

The court was also in error in refusing to permit the plaintiff to show how many of the men had had previous experience, and that the plaintiff had had no experience, how hard the work was, whether any of the men gave out before the accident, whether the plaintiff was in a position where he could see the rail before it hit him, and that the work was more dangerous in loading upon the moving cars than as though the cars were standing still.

The judgment of the court below must be reversed, with costs, and a new trial ordered.

CHAMPLIN, C. J., MORSE and GRANT, JJ., concurred. McGRATH, J., did not sit.