WILLIAM G. PALMER v. THE MICHIGAN CENTRAL RAIL-
ROAD COMPANY.

[See 87 Mich. 281.]

93   363
98   414
93   363
s53NW 397
s32ASR 507
p133 ³197

*Master and servant—Negligence—Vice-principal—Evidence.*

1. To require a gang of 16 men to range themselves in line along a train of moving cars, and, acting as · one man, to lift from the ground and throw upon the car as it passes them a steel rail weighing from 600 to 700 pounds, and then to run fast enough along the uneven ground, usually observed along the side of a railroad track, to be able to have the next rail in position to throw on the car of the moving train at the proper moment as it passes, at least without notifying a new and inexperienced man of the great hazard attending the performance of such work, is negligence *per se.*

2. A narrow or technical construction of the rule of *respondeat superior* is not in harmony with the more recent decisions on that point, and the rule laid down in *Harrison v. Railroad Co.,* 79 Mich. 409, may be considered as settled law in this State.

3. While it is not held that it is necessary to show it by positive proof in every case, yet the question whether or not the servant has power to employ and discharge other servants is important in determining whether or not he is deemed to be a superior servant, for whose acts the master is held liable.

4. It is not error to exclude testimony showing whether or not the attorney for a plaintiff in a negligence case has taken the case to prosecute on a percentage, and whether or not he is bearing the expenses of the litigation; citing *Denman v. Johnston,* 85 Mich. 387; *Ripley v. Seligman,* 88 Id. 177.

5. The declaration in a negligence case only claimed for an injury to plaintiff's leg, caused by its being struck by a steel rail, which bounded back from the car upon which he was assisting in loading it. Upon the trial plaintiff was asked if there was anything on his hip indicating the force of the blow, which question was objected to because the declaration only claimed for an injury to plaintiff's leg, but he was permitted to answer the question on the statement of plaintiff's counsel that the testimony was offered for the purpose of showing the force of the blow, and that he desired the court to instruct the jury that they could not give any damages for an injury to the hip; which action of the court is sustained.

Error to Cass.    (O'Hara, J.)    Submitted on briefs October 14, 1892.    Decided October 27, 1892.

Negligence case.    Defendant brings error.    Affirmed. The facts are stated in the opinion, and in 87 Mich. 281.

*Edwards & Stewart (Ashley Pond and Henry Russell, of counsel), for appellant.*

*Howell & Carr,* for plaintiff.

DURAND, J.    This cause has been in this Court once before, and is reported in 87 Mich. 281.    The record in that case, upon most of the important questions raised, was substantially the same as this, and the principal facts upon which the plaintiff has based his suit were, of course, the same.    We will therefore only restate generally such portions of the facts as are necessary for a proper consideration of the questions now presented.

On September 10, 1889, Patrick Cavenaugh, who had been in the employ of the defendant as a section foreman for 19 years, and who had charge of a section from Dowagiac to a point 3¾ miles east, caused the employment of the plaintiff as a regular section hand.    On the 11th day of September, 1889, and being the second day of plaintiff's employment, the gang of men in which plaintiff was working, together with other men in the employ of the defendant, including the section foreman, were put to work loading rails on a moving train of flat cars, operated by defendant, under the direction of Patrick Wahl, an assistant road-master of the defendant railroad, and which position he had held for upwards of 20 years.    The men, of whom the plaintiff was one, were placed upon opposite sides of the cars, so as to provide for about 16 men to each rail; and it became their duty, under the order and direction of the assistant road-master, to lift and throw the rails upon the flat cars as they were passing.    As soon

as a rail had been thrown upon a car, the men were expected to run ahead to the next rail, and have it in position to throw upon the car as soon as it came along. The train was kept moving at a rate of speed variously estimated at from one to four miles an hour. But, whatever the rate of speed was, it was fast enough to require the men to use a great deal of expedition in order to throw on the rails and keep up with the moving train. The rails weighed from 600 to 700 pounds, and, in consequence of the method employed, the work was hard, and required every man to move quickly and with precision, so as not to interfere with the rest of the men in their attempt, and, while acting in unison, to reach each rail, and be in position to throw it on the passing car at the proper instant of time in its passing. While engaged in this work, a rail fell or bounded back off the car, and fell upon the plaintiff's leg, and crushed it, so that it had to be amputated below the knee.

The plaintiff claims, and we think the record fully sustains him, that he was exercising due care upon his part at the time of the accident. Especially is this so when his inexperience, his lack of knowledge of the danger to which he was subjected, and the extremely hazardous method employed by the defendant in causing the work to be done, are considered. Although entirely without knowledge of the danger to which he would be subjected, no special information or warning was given him by the assistant road-master, Mr. Wahl, beyond that given to all the men, which, as testified to by defendant's witness, Section Foreman Cavenaugh, was that—

"He wanted the men east of Dowagiac to go on the north side, and the men west of there to go on the south side, and he wanted every one of them to take care of themselves that day, and he didn't want no man to get hurt."

The court submitted to the jury the entire question of want of knowledge on the part of the plaintiff of the danger attending the work, as well as the question of any want of care or of any contributory negligence upon his part, in an entirely fair and impartial manner, and, they having settled that question in his favor, we cannot disturb it, even if we were disposed to do so.

The defendant alleges error in that the court charged the jury that the master was represented by Patrick Wahl, the assistant road-master, who was in charge of the work; that the defendant was responsible for his management of the work; and that his negligence was the defendant's negligence. Under the case, even as made by the defendant, we think the court was right in so instructing the jury. It is too clear to admit of argument that the assistant road-master, Wahl, had the exclusive, unconditional control of all the men engaged upon this work at the time of the accident. He had charge of and directed the method of its performance, and, while it does not appear that he personally had anything to do with employing plaintiff in the first instance, yet his authority was so great that, at least while engaged in this particular work, he even had control and direction over the section foreman, Mr. Cavenaugh, who *did* employ the plaintiff, and who also, as representing the defendant, acted in accordance with Wahl's instructions in reference to the work and method of its performance. Under the facts shown by this record it is apparent that Mr. Wahl, as assistant road-master, had not only full power to direct and control the work and prescribe the method of its performance, but that he did so, and, in addition, that his judgment as to what men should be employed, and when or how long their employment should continue, or when a man should be discharged from such employment, was absolute, or as nearly so as it is possible for a master to confide a power of that sort to an agent to

perform for him. To hold otherwise would be to close our eyes to conditions patent to everybody in all the ordinary business affairs of life. It is evident that the plaintiff and all the other section hands, including the section foreman, looked upon Wahl as the absolute manager and controller of the work, and from whom they received their orders, and whom they were bound to obey. Under these circumstances, we must hold that the act of Wahl was the act of the defendant. A narrow or technical construction of the rule of *respondeat superior* is not in harmony with the more recent decisions on that point, especially in this State. In the well-considered case of *Harrison v. Railroad Co.*, 79 Mich. 409, this Court, in an opinion written by Mr. Justice LONG, unanimously say: ·

" It is difficult to lay down any general rule which shall determine all cases.  *  *  *  The tendency of modern adjudications is more and more to relax the rule that those who are engaged in the same common enterprise or business are fellow-servants, especially if it can be pointed out that the one in fault occupies some higher grade or more power than the party injured.  *  *  *  Some general rules may, however, be laid down which in many instances may serve as a guide in the determination of the question. It is not to be determined solely from the grade or rank of the offending or injured servant, but it is to be determined by the character of the act being performed by the offending servant. If it is an act that the law imposes the duty upon the part of the master to perform, then the offending employé is not a fellow-servant, but a superior or agent, for whose acts the master is held liable.

" Again, if the master has delegated to a servant or employé the care and management of the entire business, or a distinct department of it, the situation · being such that the superior servant is charged with the performance of duties towards the inferior servant which the law imposes upon the master, then such superior servant stands in the place of the master, and the rule of *respondeat superior* applies."

While we do not hold that it is necessary to show it by positive proof in every case of this kind, yet the question

of whether or not the servant has power to employ and discharge other servants is important in determining whether or not he is deemed to be a superior servant, for whose acts the master is held liable. *Chapman v. Railway Co.*, 55 N. Y. 579; *Railway Co. v. Salmon*, 11 Kan. 83.

The same doctrine is asserted in an opinion by Mr. Justice COOLEY in *Quincy Mining Co. v. Kitts*, 42 Mich. 39, who cites in support of the position taken: *Albro v. Canal Co.*, 6 Cush. 75; *McAndrews v. Burns*, 39 N. J. Law, 117; *Malone v. Hathaway*, 64 N. Y. 9; *Hard v. Railroad Co.*, 32 Vt. 473. The same principle was again laid down by this Court in *Ryan v. Bagaley*, 50 Mich. 179, and in *Brown v. Gilchrist*, 80 Id. 56.

We think the rule, as stated, may now be considered as settled law in this State, and we are not disposed to depart from it. This disposes of all the assignments of error relating to this question. We again hold, as was held in *Palmer v. Railroad Co.*, referred to, that Wahl stood in the place of the master, and the defendant is liable for his negligent acts.

That the method of doing the work as directed by him was an extremely dangerous one, hardly requires proof. It is self-evident. To require as large a gang of men as he had under his control at the time of the accident to range themselves in line along a train of moving cars, and, acting as one man, to lift from the ground and throw upon the car as it passed one of these heavy steel rails, and then to run fast enough along the uneven ground, usually observed along the side of a railroad track, to be able to have the next rail in position to throw on the car of the moving train at the proper moment as it passed, at least without notifying a new and inexperienced man of the great hazard attending what we are happy to be able to say from the testimony *was quite an unusual requirement*, is, in our opinion, negligence *per se*. Under these

circumstances, defendant is liable for the injury resulting to the plaintiff, unless he was wanting in due care or was guilty of some contributory negligence upon his part, and which fact was settled in his favor by the jury upon the trial of the case.

Some questions were raised upon the trial in relation to the admission or rejection of certain testimony, but, under the view we have taken, most of them become unimportant.

Upon the trial the plaintiff was asked, " Is there anything on your hip now that indicates the force of the blow?" This was objected to by the defendant's counsel for the reason, as stated by him, " that injury to the hip is not in issue, and the declaration only claims for an injury to plaintiff's limb;" upon which plaintiff's counsel said: " We don't claim damages for it. I introduce it for the purpose of showing the force of the blow, and the manner it was inflicted, as bearing on the question of how the rail came off. * * * I want the court to say to the jury that they cannot give any damages for an injury to the hip." Whereupon the court overruled the objection, and permitted the witness to answer. Under the statement made by plaintiff's counsel, we are not disposed to think that the action of the court was erroneous, or, if it were, that it was prejudicial error.

The defendant also claims error because the trial judge refused to permit testimony showing whether or not plaintiff's counsel had taken the case to prosecute on a percentage, and whether or not he was bearing the expenses of this litigation. In this the judge was right, and the matter is ruled by *Ripley v. Seligman,* 88 Mich, 177, and *Denman v. Johnston,* 85 Id. 387.

Error is also claimed because of certain remarks made by plaintiff's counsel in his argument to the jury which

93 MICH.—24.

might tend to prejudice them, and induce them to give plaintiff larger damages than they should. We do not say but that there might be cases where this contention would be of force, but we do not think that that effect was produced in this case. The defendant's counsel used language quite as much calculated to produce an opposite result; and if, in the heat of the argument, the counsel for the respective parties slightly overstepped the bounds of professional license in the discussion of the various and important questions they were presenting, we do not think that in this particular case there was prejudicial error.

We have carefully examined the able and exhaustive brief of the learned counsel for the defendant, and we fail to find anything which can be considered as reversible error. Upon all questions, where the defendant was entitled to it, the circuit judge either submitted them in the language employed by counsel, or as nearly in that language as can reasonably be expected, and this is sufficient to sustain the charge as given.

It follows that the judgment must be affirmed, with costs.

The other Justices concurred.