MORCH *v.* TOLEDO, SAGINAW & MUSKEGON RAILWAY CO.

RAILROAD COMPANIES — FELLOW-SERVANTS — VICE PRINCIPAL —
FOREMAN OF WORK TRAIN—NEGLIGENCE.

> A road-master, being prevented by illness from accompanying
> a work train sent out to distribute railroad ties along the
> right of way, placed a section foreman in charge of the train,
> with instructions as to the loading, removing, and handling of
> the ties. No general power was conferred upon the foreman
> to make up and send out trains, to determine when and
> where they should go, to employ and discharge workmen, or
> to represent the road-master other than upon the particular
> occasion, and in accordance with his instructions. *Held,*
> that the foreman did not become a vice principal of the com-
> pany, so as to render it liable for injuries to one of the work-
> men resulting from the negligence of the foreman while in
> charge of the train.

Error to Muskegon; Russell, J. Submitted April 9,
1897. Decided May 28, 1897.

Case by John Morch against the Toledo, Saginaw &
Muskegon Railway Company for personal injuries. From
a judgment for plaintiff, defendant brings error. Re-
versed.

*Geer & Williams* (*E. W. Meddaugh*, of counsel), for
appellant.

*Chamberlain & Cross* (*Turner & Turner*, of counsel),
for appellee.

MOORE, J. The plaintiff sued defendant to recover for
severe personal injuries received by him while he was in
the employ of defendant, and recovered a judgment, from
which defendant appeals. The avocation of plaintiff was
that of a section hand on defendant's road. At the time
he received his injuries he was standing upon the steps

or platform of the front end of the caboose, which was attached to a train consisting largely of flat cars loaded with ties. The train was in motion. The men would throw one end of the tie off the train, and the motion of the train would carry the other end of the tie forward, until the tie would drop upon the roadbed. Some of the ties would drop in such a way as to be dangerously near the track. Upon the day in question, the plaintiff had jumped from the front end of the caboose, thrown a tie back, and got on at the rear end of the caboose, gone through the car, and was in a position to get off again, should occasion require. His claim is that the speed of the train was quickened so as to make it unsafe to get off, and unsafe to throw the ties, and that, while so standing there, one end of a tie was resting on the ground, and the other end came against his leg and crowded him against the car, resulting in his loss of a leg and other serious injuries.

The declaration alleges that the train was in charge of a road-master, or an assistant road-master, who represented the master, and that, while following his directions, the injury occurred. It is the claim of plaintiff that the train was in charge of Philander Schuman, who was then acting in the capacity of road-master; that the plaintiff was acting under his orders; that it was by the direction of Mr. Schuman that the speed of the train was increased, making the work so hazardous as to result in the injury to the plaintiff. The important question, then, is, in what capacity was Mr. Schuman acting? The road-master was Mr. Raynor. The road had no officer who was designated as an assistant road-master; but it is claimed that the character of the duties of Mr. Schuman was such as to make him the representative of the road for the day, and that for the purposes of this case he must be treated as an assistant road-master. The record discloses that the usual employment of Mr. Schuman was foreman of section 6 at Greenville. He had three or four men under his charge, with the right to discharge them

for cause, and hire other men in their places.    Mr.
Schuman lived in Greenville.    The road-master, Mr.
Raynor, also lived at Greenville.    He had been sick at
times, and at the time of the accident was sick at Green-
ville.

Upon the morning of the day of the accident, Mr.
Raynor sent Mr. Schuman out with the train upon which
plaintiff was hurt.    He gave him instructions in re-
lation to the loading, removing, and handling of the ties,
and it was Mr. Schuman's duty to report to Mr. Raynor
in the evening what he had done.    Mr. Schuman had
been sent by Mr. Raynor with the train upon a number
of occasions before this, receiving his instructions before
he started out, and reporting what he had done upon his
return.    The trainmen consisted of the engineer and fire-
man, a conductor, and one or two brakemen, and three or
four section foremen and their section men.    It was the
duty of the trainmen to handle the train, and the duty of
the section foremen and the section men to handle the
ties.    When the ties were distributed upon a given sec-
tion, the foreman of that section indicated what ties, and
how thickly he wanted them distributed; and I think the
record fairly discloses that he communicated his desires
to Mr. Schuman, and he in turn indicated to the con-
ductor any change desired in the speed of the train,
to facilitate the distribution of the ties.    I think, too,
the record fairly discloses that Mr. Schuman was author-
ized to direct the movements of the train for the time
during which he had charge of it.    Does that make
him vice principal?    He had no right to direct when a
train should be made up and sent out.    The road-mas-
ter had such right.    He had no right to determine where
the train should go, and when, except as he received
his instructions from the road-master.    The road-master
had the right to determine both these things.    Mr. Schu-
man had no right to hire or discharge any men except
the three or four men employed on his section (though
the plaintiff says he heard him say he had such author-

ity). The road-master had authority to employ and discharge men. Mr. Schuman had no authority outside of his work as section foreman, except what was conferred upon him, for the time being, by Mr. Raynor, the road-master.

It is true, Mr. Schuman had charge of the train when the accident *occurred, but does that make him a vice principal? Where a number of men are employed, some one must be at the head of them. A section gang must have a foreman. A bridge gang must have some one in authority. Freight trains must be in charge of some one who must be obeyed. He is usually known as a conductor. Where concert of action is required, there must be some one who has authority and control over the others. It does not follow from that, however, that the one occupying a superior position to another, with the right to give instructions which must be obeyed, is a vice principal. *Quincy Mining Co. v. Kitts*, 42 Mich. 34. It has been repeatedly held that a foreman of a section gang and the section men are fellow-servants. *Hammond v. Railway Co.*, 83 Mich. 334; *Timm v. Railroad Co.*, 98 Mich. 226. It has been held that the conductor, engineer, and other employés of freight trains are fellow-servants. *Stanley v. Railway Co.*, 101 Mich. 202. The case at bar is unlike the cases cited by counsel for plaintiff. In the case of *Harrison v. Railroad Co.*, 79 Mich. 409 (19 Am. St. Rep. 180), the train was in charge of the assistant road-master, who had general charge of a division of the road. In the case of *Erickson v. Railway Co.*, 93 Mich. 414, the train was in charge of one who had full charge of it, and complete control over every one employed, with full power to hire all laborers employed; to whom alone they could make complaint. In the case of *Palmer v. Railroad Co.*, 87 Mich. 281, the work was under the direction and control of the assistant road-master. The case at bar is not so strong a case against the defendant as *Schroeder v. Railroad Co.*, 103 Mich. 213, in which this court held that the plaintiff could

not recover. We think the last-named case disposes of this one.

Judgment is reversed. No new trial ordered.

The other Justices concurred.