LA BARRE *v.* GRAND TRUNK WESTERN RAILWAY CO.

1. RAILROADS—INJURY TO SECTION HAND—LOADING RAILS—MOVING CARS—NEGLIGENCE.

Where, in an action for injuries to a section hand while loading rails on moving cars, there was no proof to rebut evidence that rails were ordinarily loaded on cars while in motion, the adoption of such method did not constitute negligence.

2. SAME—WARNING OF DANGER—QUESTION FOR JURY.

Whether it was the duty of the railroad company to have instructed such employé as to the manner of doing the work, and to have warned him against the danger of a rail falling from a car after it had been thrown thereon, was for the jury.

3. SAME—FELLOW-SERVANTS—VICE-PRINCIPAL—INSTRUCTIONS TO JURY.

Plaintiff in such action claimed that the injury was occasioned by undue haste in moving the train, which was at the time in charge of an assistant roadmaster, the conductor being absent; but such roadmaster testified that the speed of the train was entirely controlled by the engineer. *Held:*

(1) That whether the injury was due to the roadmaster's negligence was a question for the jury.

(2) That, if it *was* so due, defendant was liable, as the roadmaster was not plaintiff's fellow-servant, but a vice-principal.

(3) That, if the negligence of the engineer alone caused the accident, there could be no recovery, as the engineer *was* such fellow-servant.

(4) That it was error not to give the last-mentioned proposition in instruction to the jury; a general charge that plaintiff could not recover if his injury was due to the negligence of a fellow-servant being insufficient.

Error to Cass; Carr, J. Submitted December 5, 1902. (Docket No. 149.) Decided May 12, 1903.

Case by Frank La Barre against the Grand Trunk Western Railway Company for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*E. W. Meddaugh* ( *Geer & Williams*, of counsel ), for appellant.

*W. C. Jones* and *M. L. Howell*, for appellee.

Hooker, C. J. The defendant has brought error on a judgment for $4,000, recovered by the plaintiff for personal injuries received while loading rails upon a moving train. The negligence relied upon is:

1. That he was inexperienced in such work, and was given no instructions how to do it, nor any warnings against the danger of a rail falling off after it was thrown upon the moving car.

2. That the work was done in such haste as to make it unnecessarily dangerous.

The defendant contends that the court should have said to the jury:

1. That the method of loading the rails was not negligent.

2. That the plaintiff assumed the risks of the employment.

133 M. —13.

3. That the plaintiff's injury was caused by his own negligence.

4. That, if any other persons were guilty of negligence which contributed to cause the accident, they were fellow-servants of plaintiff, for whose negligence the defendant is not liable.

There is much testimony tending to show that the general method adopted of loading these rails—*i. e.*, upon moving cars, with gangs of men taken from section gangs—was the ordinary method of doing such work, where the rails have been obtained from taking up an old track. We think there is no proof to the contrary, and therefore, so far as defendant's general method, adopted in this instance, is concerned, it was not shown to be negligent. We do not overlook the case of *Palmer* v. *Railroad Co.*, 87 Mich. 281 (49 N. W. 613), which is said to be on all fours with this case. We think that case does not hold that in all cases a court must leave to the jury the reasonableness of this method of loading rails,—*i. e.*, loading them upon moving cars,—and that a jury in any and every case may award damages to persons injured if the train is not stopped for the loading of each individual rail. If it could be said that such was the holding, it was at best under the proofs in that case. In another the undisputed proof might show the contrary.

But we think the inference is not warranted. Many more things than the general method are involved in that case. For instance, every one must admit that there is a limit to the ability of men to keep up with a train, and there is a limit to human endurance, and, should this be passed through the fault of the master, we are not prepared to say that there might not be circumstances under which he should be held liable for the consequences. In the case before us, if it is true that the men were forced beyond their powers of endurance, or ability to keep up or to avoid injury, and the plaintiff was injured in consequence, the fault was that of some one or more of the defendant's servants.

The plaintiff claims that the defendant's train and men were in charge of an assistant roadmaster, who had general supervision of all. If it can be said that the alleged haste was due to him, and that he was not a fellow-servant, the master must be held responsible for the haste. There was testimony, also, that this man was not instructed, and that he was not warned. We cannot say that it was necessary that he should be, and, while we are impressed that this was much like common labor, and that the sectionman who is in the habit of handling rails can hardly need information as to the way in which they should be handled, even in loading a moving car with them, we cannot say, as matter of law, that the defendant did not owe him the duty claimed. In the *Palmer Case* this was held to be a question for the jury. This being so, the duty was that of the master, and the failure to give it was the negligence of the master, if it was negligence.

The assistant roadmaster testified that he merely happened to go with the train that day to check up the rails; that the train was in charge of a conductor, and the gang of a foreman. It goes without saying that whoever was in charge of that work owed it to the men to see that they were not overworked through undue haste; but whether the master is accountable or not must depend upon whether such person is to be held a fellow-servant or not. It is claimed that the assistant roadmaster was the vice-principal, and such was the holding in the *Case of Palmer*, *supra*, and the company was held liable under the facts in that case. Exhaustion, and danger from undue haste in running the train, might be due to the negligence of the engineer or conductor, or it might be due to negligence in the management of the enterprise by a foreman in charge of the job, without any negligence of a vice-principal, if one were present; and, if so, as all were engaged in the common enterprise, the plaintiff could not recover for such negligence, because it would be that of a fellow-servant, which is an assumed risk. Upon this branch the case is

resolved into two questions: (1) Was the negligence of the assistant roadmaster the cause of the injury? (2) If so, does the fellow-servant rule apply? The first question is one of fact, and properly belongs to a jury. The second is one that has caused most courts trouble.

The general rule established in this State is that the question of whether or not one is a fellow-servant is to be settled by the nature of the act, rather than the rank of the respective servants. When that rule can be applied, it furnishes a comparatively safe guide. Counsel for defendant contend for its application here. On the part of the plaintiff it is contended that there is a class of servants for whose negligence the master is liable, although, if it were the negligence of one belonging to another class of servants, he would not be. This is upon the theory that one who represents the master in the way of general control of the business, as his representative, is his vice-principal, and binds him. It is manifest that this is, in a sense, antagonistic to the former rule, for in a way many servants represent the master, and have, in the division of labor, control, more or less general, in their respective departments, who are called "fellow-servants." Yet the doctrine exists, and there is much to be said in favor of its application in proper cases. The necessary consequence, however, is a constant struggle for its extension by servants, and a corresponding effort for its restriction by masters, which serves to illustrate the necessity for a consistent rule, which shall make the line of demarkation plain and reasonable, instead of uncertain and arbitrary. But it is not easy to suggest a test which can be safely said to be an infallible one.

In *Quincy Mining Co.* v. *Kitts*, 42 Mich. 34 (3 N. W. 240), there is an intimation of the rule contended for by the plaintiff, but it is held that a timberman in a mine does not come within it. It is hinted at in *Smith* v. *Potter*, 46 Mich. 265 (9 N. W. 273, 41 Am. Rep. 161), but held that an inspector of cars has not a duty of management or general supervision, and is not within such rule. It was

announced in *Ryan* v. *Bagaley*, 50 Mich. 179 (15 N. W. 72, 45 Am. Rep. 35), and applied to a mining captain, who had exclusive and complete control of the physical part of the master's business. In that case the rule was carefully limited.

The case of *Hunn* v. *Railroad Co.*, 78 Mich. 513 (44 N. W. 502, 7 L. R. A. 500), extended the rule to one who did not have exclusive and full control of defendant's business, and applied it to a train dispatcher, who had supervision over the running of trains. Presumably, he did not determine what trains should be sent out, and the case, while well supported by authority in some States, is at variance with decisions in others, and is said to be within the principle of *Ryan* v. *Bagaley*, *supra*, because the train dispatcher is "given supreme control;" and it is also said that "his act is the act of the master."

In *Harrison* v. *Railroad Co.*, 79 Mich. 409 (44 N. W. 1034, 7 L. R. A. 623, 19 Am. St. Rep. 180), an assistant roadmaster took a train to move telegraph poles for some construction or repair work. He personally gave directions to a member of the working gang, who was injured in consequence. It was held that they were not fellow-servants, and it was left to the jury to say whether the injury was the result of his negligence or that of the engineer, upon which liability was made to depend. *Id.*, 79 Mich. 416. The discussion from page 421 to 428 apparently indicates the view that the assistant roadmaster represented the master.

The case of *Palmer* v. *Railroad Co.*, 87 Mich. 281 (49 N. W. 613), *Id.*, 93 Mich. 366 (53 N. W. 397, 17 L. R. A. 636, 32 Am. St. Rep. 507), closely resembles the present case.

In *Erickson* v. *Railway Co.*, 93 Mich. 414 (53 N. W. 393), the doctrine was applied to the foreman of a gravel train. The question was passed over without much discussion, and was said to have been ruled by the *Harrison Case*. It is difficult to distinguish this case from one involving the negligence of the conductor of any train.

In *Gavigan* v. *Railway Co.*, 110 Mich. 71 (67 N. W. 1097), a section foreman was held to be a fellow-servant of his men.

In *Morch* v. *Railway Co.*, 113 Mich. 154 (71 N. W. 464), a foreman sent in place of a roadmaster was held not to be the *alter ego*. This case and the *Schroeder Case, infra*, are distinguishable from most of the others, as the foremen had no general authority or control of a branch of the road or business. They were simply in charge of their respective gangs.

The embarrassment from these decisions was foreseen and indicated in *Beesley* v. *F. W. Wheeler & Co.*, 103 Mich. 203 (61 N. W. 658, 27 L. R. A. 266), where the question was reserved, and *Schroeder* v. *Railroad Co.*, 103 Mich. 213 (61 N. W. 663, 29 L. R. A. 321, 50 Am. St. Rep. 354), where the authorities are discussed. In the latter case a foreman was held not to be the *alter ego*.

It will be seen from this review that the assistant roadmaster is within the rule contended for by the plaintiff, and, if the negligence was his, the master was liable. The jury so found, and it was not error on the part of the learned circuit judge to submit the question.

We cannot say that the undisputed proof shows plaintiff to have been guilty of contributory negligence, and no authority is cited to the proposition that, "if any fellow-servant was guilty of any negligence which contributed to the accident, defendant is not liable." *Hunn* v. *Railroad Co.*, 78 Mich. 513 (44 N. W. 502, 7 L. R. A. 500). We are not certain that counsel intended to be understood that a plaintiff is affected by contributory negligence of a fellow-servant. If not, their contention is probably satisfactorily disposed of by our holding that, if the negligence of the engineer alone caused the accident, without fault on the part of the assistant roadmaster, the plaintiff could not recover. See *Harrison* v. *Railroad Co.*, 79 Mich. 416 (44 N. W. 1034, 7 L. R. A. 623, 19 Am. St. Rep. 180).

There is no reason to question the general rule that an

employé assumes the risk of the dangers incident to the business in which he engages, so far as they are understood or apparent. The plaintiff did so in this case; but he cannot be said to have assumed the risk of the negligent acts of the master himself, or one who is his *alter ego*, within the cases cited. The plaintiff's injury is, according to his claim, due to one or both of two causes: (1) Ignorance of a danger; (2) unreasonable haste in doing the work. Unless we can say as matter of law, from the undisputed evidence, that this work was such that one ordinarily employed, and who had experience, as a sectionman, should have understood the danger, there was a duty of instruction and warning, and this duty was that of the master, who could not avoid the responsibility by imposing it upon a servant.

Again, while the general method of loading rails on moving cars may not be negligent, there may be circumstances under which, and times when, it is not prudent, and when to keep the train in motion might be negligence on the part of the person responsible therefor. In such case the master might or might not be liable, depending upon whether the negligence was that of a fellow-servant or not. A jury should not be given to understand that a master is liable when he is only made so by treating as a part of the general method adopted by the company all of the departures from prudence by those charged with the work. In this case the defendant had a right to send a train to move these rails, in charge of a competent man, without explicitly pointing out the exact method, whether by loading upon moving or stationary cars or prescribing a rate of speed. The management might be negligent or not, according to what should be done.

The plaintiff claims that the negligence consisted in not warning the plaintiff, and in overtaxing the men by undue speed, for which the person who set plaintiff at work and the assistant roadmaster were to blame. There was testimony that the train was in charge of a conductor, who controlled the speed by signaling the engineer, and a fore-

man, who supervised the work of the men by directing them when to throw the rails, though it is admitted in defendant's brief that this accident occurred when the conductor was absent, and while the assistant roadmaster was acting as conductor, and that he directed that the train be moved at the rate of one mile per hour. He testified, however, that he gave no orders, and had nothing to do with the control of the train, and that he merely happened to be there that day, and that the engineer controlled the speed. Again, he said:

"That day I was simply on the train keeping tab on my car numbers and the number of rails loaded, so I could make my report. I was busy until they were through loading. I was simply right there with the train, keeping check of my rails and cars. The train didn't move under my orders. I told the engineer and the conductor that the rails would be loaded while the car was moving. I think I told the engineer to go about a mile an hour."

This testimony made it possible for the jury to find that the accident was not due to the assistant roadmaster's negligence, and that it was ascribable to the engineer. *Harrison* v. *Railroad Co., supra.* The charge recognized no such possibility, and left the jury nothing to do but to find a verdict of guilty if the jurors found that an injury resulted from undue speed or an improper method of loading. It is true that the judge told the jury that the plaintiff could not recover if the plaintiff or his fellow-servants were guilty of negligence contributing to the injury, but they were *not* told who his fellow-servants were, and they may have understood the term to have application to members of his work gang only. There was not a hint that the engineer or foreman was a fellow-servant, yet there is proof that the foreman gave the word to throw when plaintiff was hurt. In view of these facts, instruction that "the master was represented by James Hamilton, the assistant roadmaster," and that "the defendant is responsible for the management of the work, and the negligence of management is the defendant's negligence," was too broad.

This was apparently a request to charge of the plaintiff's counsel, and, while requests to charge are frequently efficient aids to the trial judge, they are apt to be, as in this case, misleading, when they are given to the jury as such. It is preferable and safer to give a connected and logical charge, in which so much of the various requests as can be properly and profitably used is included without reference to the fact that they are requests of either party.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.