## HARRIS v. YAZOO & M. V. R. CO.
### No. 5689.

Court of Appeal of Louisiana. Second Circuit.

June 1, 1938.

Rehearing Denied June 30, 1938.

Writ of Certiorari and Review Denied Aug. 5, 1938.

J. Norman Coon and H. H. Russell, both of Monroe, for appellant.

Thompson & Thompson, of Monroe, for appellee.

TALIAFERRO, Judge.

Plaintiff, a member of defendant's building crew, was injured while in the discharge of his duties. He sues to recover damages. Defendant is engaged in interstate commerce. Plaintiff was injured while performing services on its main line; therefore, his suit was brought under and is governed by the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–59, and the rights and liabilities of the parties thereto

must be measured and determined by its provisions.

The accident, superinducing the damages sued for, occurred about two and one-half miles east of Ruston, Louisiana, near the hour of three o'clock P. M., September 21, 1936. The track there runs east and west. The material facts of the case, with minor exceptions, are not in dispute. We here briefly give them:

Defendant was installing a line of metal culverting for drainage purposes through the base of its roadbed at the situs of the accident. Prior thereto, its trainmen had unloaded the necessary quantity of this material to complete the line, about 100 feet west of said situs. It consisted of 7 joints or cylinders 14 feet long, with diameters of 48 inches. Each joint weighed over 1,000 pounds. When unloaded, it rolled down the north side of the embankment, 20 feet high, to its base. It was, of course, first necessary to haul the joints up the embankment and onto the track and then to transfer them to the spot where they were to be put in place under the roadbed. This was accomplished by the use of ropes and the physical power of the crew of workmen, consisting of nine. Two or more ropes would be made fast to the north rail. The ropes were then extended down the embankment and a section of the culverting pushed or rolled thereon. Workmen would then take hold of these loose ends and pull toward the track while others would push the cylinder from the opposite side. By this process all seven of the joints were brought upon the tracks. Each was in turn placed across the rails and rolled to a point above the opening through which the culvert line was to be laid. Five of the joints in order were then placed between and parallel to the rails and by the physical efforts of the crew pushed or lifted over the north rail and released to roll by force of gravity down to the base of the embankment. The other two joints by like process were sent rolling to the base of the south side of the embankment. Plaintiff actively assisted in handling the cylinders in this manner. In one end of each of said joints an incision or slip twelve inches long had been made at the factory. This was done to reduce the diameter of that end of the joint so that it could be telescoped into another joint, and by repetition all sections could be united into a cylinder over 80 feet long. Plaintiff was injured when the last joint was lifted over the rail and started on its way down the embankment. He was at the extreme west end of the section and unfortunately the gauntlet of the glove on his left hand caught in said incision and he was hurled violently down the embankment some fifteen feet, landed on his right shoulder, and was seriously and painfully injured.

Plaintiff avers his own freedom from negligence or carelessness as a cause or contributing cause of the accident. He charges that to defendant's negligence alone may the accident be accredited. He alleges, and now contends, that the sections of culverting should have been lowered to the base of the roadbed by the same method or one similar thereto, as was employed to haul them upon the track at the inception of the work; that the failure of defendant's agents and representatives to so do amounted to gross negligence and carelessness which, he avers, was the proximate cause of the accident. He further alleges that before any of the cylinders were allowed to roll down the embankment, a request was made of the foreman over the crew to furnish ropes for that purpose; that the request was refused and orders given to handle the cylinders as was done. In summation, plaintiff alleges that he was injured through the negligence of his employer while performing duties within the scope of his employment pursuant to the specific orders of his superiors.

Defendant denies that the accident was caused by negligence or carelessness of any kind or character on its part or on the part of its agents or representatives; but avers that it was the result of the "accidental entanglement of a glove which plaintiff was wearing, in the seam of the joint of the pipe which plaintiff, together with his fellow-employees was handling at the time". The suit is further defended on the ground that if there were risks or hazards present in the handling, placing, removing and rolling of said pipe, same was open, obvious and ordinary, and that plaintiff, as an employee, assumed same as an incident of his employment and the work performed thereunder.

From a judgment adverse to plaintiff, he has appealed.

■ Since this suit was brought under the provisions of a Federal statute and the rights and liabilities of the parties thereto must be determined thereby, the decisions of the Federal courts construing and en-

forcing the statute, and not those of the state courts, if there be conflict between them, must prevail. Southern Railroad Company v. Gray, 241 U.S. 333, 36 S.Ct. 558, 60 L.Ed. 1030; Show v. Texas & P. Railway Company, La.App., 166 So. 200.

Pertinent portions of the Federal Employers' Liability Act are embraced in Sections 51, 53 and 54, Title 45, U.S.C.A., which we here quote or epitome: "Every common carrier by railroad while engaging in commerce between any of the several States or Territories * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." Section 51.

Section 53 provides that contributory negligence of an injured workman of a common carrier shall not bar recovery, "but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." It is further provided therein that if the violation by the common carrier of any statute enacted for the safety of employees contributed to the injury or death of the employee, such employee shall not be held to have been contributorily negligent.

Section 54 reads as follows: "In any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

From these sections of the law, so far as the issues of this case are concerned, the following principles may be deduced:

■ 1. Recovery by the injured employee depends upon establishing negligence of the employer as a cause of the injury.

■ 2. Contributory negligence of the employee does not bar recovery by him from the negligent employer, but operates to reduce the quantum of recovery.

■ 3. The common law doctrine of the assumption of risks by the employee is rec-

ognized and declared to be (in a proper case) a bar to recovery.

■ 4. Neither contributory negligence nor assumption of risks is a tenable plea if it appears that the violation by the employer of any law enacted for the safety of employees contributed to the injury of the employee.

We are convinced from the character of answers given by plaintiff to the many questions propounded to him as a witness that intellectually he is above the average laboring man. He is 43 years old and at the time of the accident had been in defendant's employ as a member of its bridge and building crew, for over nine years. Once or twice prior to the time of the accident, he had assisted in handling culverting of the identical kind involved in the present accident, which was rolled down the defendant's embankment, as was done in the present case. He knew that each joint had an incision in one end. We quote the following from his version of the facts immediately prior to and at the time of the accident: "We rolled it from between the tracks on the end of the ties and I had my hand inside the pipe, had it turned on the inside like that and I had on a pair of heavy canvas gloves and had on an overall and jumper and my hand was close to the slip, about that wide, I guess, and when it went off of the end of the ties it caught in my glove and took me with it."

It is patent from this testimony that plaintiff knew the incision was in his end of the cylinder, because he admits that his "hand was close to it". He also testified that he was gripping the edge of the cylinder with both hands, the fingers being on the inside and the palms without, when the foreman gave the command, —"let her go". To so hold the cylinder, he must have been, as he also admits, not behind it but at its western end. He and the other workmen had been directed by the foreman to fall in behind the cylinder and push or shove it over the rail, which is five and one-half inches high. He admits that he personally did not ask for a rope or cable to be used in lowering the cylinder; and further admits that if ropes had been used, the possibility of accident would not have been entirely eliminated. It was his opinion that the safer method would be to use ropes.

■ Plaintiff failed in his effort to establish the correctness of his contention that the method employed to handle and

transfer this culverting was extra hazardous, and that defendant was guilty of negligence and carelessness in adopting such method. He introduced as witnesses in behalf of his position several employees of the A & L M Railway, which operates a short line from the city of Monroe, Louisiana, to a point in southern Arkansas. The burden of the testimony of these witnesses is to the effect that lowering the cylinders by the use of ropes was the safer method. Not one of them had had any experience in handling culverting of the size and weight involved here. In opposition to the testimony of these witnesses, we have that of the supervisor of defendant's own Bridge & Building Department, and that of the supervisors of the same department of the Missouri Pacific Railroad and of the Kansas City Southern Railroad, two trunk lines. These supervisors have had considerable experience in handling all sorts and sizes of culverting on behalf of their companies. All of them agree that the method defendant's foreman employed in the present case was the usual and customary one, and was approved as being safe. They further added that the use of a rope or ropes would have made the handling hazardous. Six members of the bridge crew testified that rolling cylinders of this character down the embankment was the usual and customary manner, and that the use of ropes would not have increased the safety of the process.

As a general rule, one is not negligent or careless who performs work in the manner it is usually and customarily performed by prudent and careful men, engaged in like or similar business. Corpus Juris, Volume 39, page 466, gives the rule to be as follows: "While the test of a master's liability is the exercise of reasonable and ordinary care for the safety of the servant, and not whether he has employed customary methods, yet as a general rule, a master will not be held responsible for injuries to a servant in the course of his employment where the usual and customary methods of work are employed, provided such methods are generally employed by prudent and careful men engaged in similar business, and provided they do not disregard the safety of the servant. The existence of a general custom, however, is immaterial when its effect is to nullify the requirements of a statute. Where a servant, knowing the hazards of his employment as the business is conducted, is injured while engaged therein, he cannot recover merely on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury."

The following excerpts from Schaum v. Southwestern Bell Telephone Company, 336 Mo. 228, 78 S.W.2d 439, at page 442, are quite pertinent to the primary issues herein. It reads:

"In determining the duty of respondent's employer under this evidence, we must remember that an employer is not an insurer of the safety of his employee. There is some danger of injury in every employment as there is in almost every human activity. An employer is not liable because there is danger in the employment, but only when he is negligent. 18 R.C.L. 545, § 60; 39 C.J. 260, § 381; 3 Labatt's Master & Servant, c. 34. * * *

" 'In regard to the style of the implement or nature of the mode of performance of any work, "reasonably safe" means safe according to the usages and habits and ordinary risks of the business. Absolute safety is unattainable, and employers are not insurers. They are liable for consequences not of danger, but of negligence, and the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business. No man is held by the law to a higher degree of skill than a fair average of his profession or trade and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same, and, however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way commonly adopted by those in the same business is a negligent way for which liability shall be imposed.' * * *

"The charge is that ordering respondent to work in the manhole without providing him goggles was negligence. That could only be negligence if it violated the standard of ordinary care. It could only violate the standard of ordinary care if the usage of average reasonable and prudent employers, in doing the same kind of work under similar circumstances, was to provide goggles, unless it was work so inherently dangerous that injury would be reasonably anticipated as the result of working without them."

Many other cases expounding the rule and principles embraced in the foregoing quotations could be cited. The following are a few of them: Williams v. Terminal Railroad Ass'n, 339 Mo. 594, 98 S.W.2d 651, 656; Newell Contracting Company v. Flynt, 172 Miss. 719, 161 So. 298, 299, 743; Hammontree v. Cobb Construction Company, 168 Miss. 844, 152 So. 279, 280; La Barre v. Grand Trunk Railroad Company, 133 Mich. 192, 94 N.W. 735; Lake v. Shenango Furnace Company, 8 Cir., 160 F. 887.

It is axiomatic that, regardless of the method employed to handle heavy objects by man power alone or in conjunction with other power, absolute elimination of every element of risk or danger may not be attained.

The case of Alexander v. Davis Bros. Lumber Company, 124 La. 1, 49 So. 724, is quite similar in its facts to the one at bar. There the flaring gauntlets of the insured servant's gloves were caught in the cogwheel of a piece of machinery. The court, inter alia, said (page 727): "We fail to discover in the facts presented by the transcript a basis of negligence in the defendant upon which to rest a judgment against it. The cogwheels by which the injury in question was inflicted as, also the set screws, to which plaintiff attaches part of the blame, were in open view, and it is idle to say that a man who has worked about sawmills for the greater part of a life of 27 years should be especially warned not to put his fingers between such wheels, or that a hanging sleeve or a loose glove may be caught therein with disastrous consequences to the wearer. If it be said that, though the cogwheels were obvious, the existence of set screws was unknown to plaintiff, the answer is found in the evidence, which shows that the set screws were as plainly visible as the cogwheels, that plaintiff had worked about the cogwheels under circumstances which authorized the inference that he had seen that which it would appear impossible for him not to have seen, and, apart from that means of actual knowledge, that he had worked about mill machinery enough to have known that the cogwheel in question was about as likely to be held in position by means of set screws as in any other way."

This case did not arise under the Federal Employers' Liability Act, but what was said and held therein is pertinent to the question of negligence involved in the present case. The Federal statute does not seek to modify or abridge the operative effect of negligence by one person causing injury to another, other than as expressly stated therein. The statute carries no prohibition against a state court applying the jurisprudence of the state to cases arising thereunder in order to determine the respective rights of the litigants, insofar as said jurisprudence is not in conflict with said statute or adjudications of the Federal courts interpreting its provisions. What was said and held in the case, supra, is not in conflict with the Federal statute or with any adjudication of a Federal court anent the question of negligence.

Plaintiff argues that when injured he was obeying his foreman's orders and had the right to rely upon his superior skill and knowledge, and to assume that he would warn him of lurking dangers about the work. We do not think plaintiff was strictly following the foreman's instructions when injured. The crew was directed to get behind the cylinder and push it over the rail. Plaintiff alone failed to do this. Whatever potential danger (if any) lurked in the cylinder because of the incision near plaintiff's hand was as obvious to plaintiff as it was to the foreman. No advice was needed by him to put him wise to the situation. As an intelligent man with many years' practical experience as a member of defendant's bridge and building organization, he knew that if his glove became foul in the incision, as the cylinder started down hill, injury would certainly befall him.

Plaintiff's energetic counsel have provided us with copious briefs teeming with many citations from which they have quoted freely in the conscientious effort to convince us of the correctness of their position. We have studied them carefully. While persuasive, they are not convincing. No good purpose would be promoted by referring to and discussing the many cases cited in order to differentiate them from the facts of the present one.

We have to confess inability to perceive in the manner and methods employed to handle the culverting any element of negligence or lack of that degree of care the exigencies of the case demanded; nor do we find that the ordinary risks or hazards of such work were to any extent increased by the course pursued by defendant's

agents and representatives in handling the culverting.

Having exonerated plaintiff from the charge of negligence as a cause of the accident and consequent damages suffered by plaintiff, it is not necessary to pass upon the defense of assumption of risks.

For the reasons herein assigned, the judgment appealed from is affirmed with costs.